[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11819

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 11, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-01557-MHS

CHAPTER 7 TRUSTEE,

Plaintiff - Appellant,

versus

GATE GOURMET, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 11, 2012)

Before CARNES, PRYOR and RIPPLE,[*] Circuit Judges.

CARNES, Circuit Judge:

---

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

The Chapter 7 trustee for the bankruptcy estate of Stacey Williams appeals the district court's grant of summary judgment to Gate Gourmet, Inc. on Williams' claims of pregnancy discrimination, race discrimination, retaliation, and state law negligence.

I.

In March 2008 Stacey Williams, a white female, became pregnant.[1] About a month later, she began working for Gate Gourmet at Hartsfield-Jackson Atlanta International Airport as a customer service representative in "Unit 300." Gate Gourmet describes itself as "the world's largest independent provider of catering and provisioning services for airlines and railroads"[2] and its clients include various airlines that operate flights out of Hartsfield-Jackson. Williams' job as a customer service representative for Gate Gourmet involved driving a truck from the company's warehouse to the gate where an airplane was docked, using a lift system to raise the truck's storage container to the airplane's height, and then pushing about 30 carts of food, drinks, and ovens across a ramp from the truck to

---

[1] "At summary judgment we view the facts in the light most favorable to the nonmoving party. We therefore do so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, we observe that what are stated as 'facts' herein for purposes of summary judgment review may not be the actual facts nor are all of the facts." Crawford v. Carroll, 529 F.3d 961, 963 n.1 (11th Cir. 2008) (citations omitted).

[2] Gate Gourmet, http://www.gategourmet.com (last visited May 22, 2012).

2

the airplane.

In early August 2008, Williams told her union steward, Pam Walker, that getting up on the catering truck was giving her a "little problem[]," but said that she could still do her job. During that conversation, Williams also told Walker that she was pregnant. Walker responded that "eventually, at some point in time, you're going to get too big to where you can't get up there." Walker then told Guy Baxter, who was Williams' supervisor, that Williams was having trouble being on a truck because she was pregnant. Baxter met with Tommy Alberts, the assistant general manager of Unit 300, and told him that Williams was having trouble catering her flights because she was pregnant. Alberts told Baxter "to make sure that she gets paperwork for whatever her issues are."

On August 11, 2008, Williams met with Walker and Baxter. During that meeting, Baxter told Williams that he knew she was pregnant and that Walker had told him she was "having issues on the truck." Williams replied that she was not having any issues and could do her job. Baxter then told Williams that "at some point in time you're not going to be able to work, you know." He also told her that if she could not carry out the duties of her current position, she would not be able to work at all because there were no light-duty positions available. Walker then told Williams to go to the doctor and get a note saying that she could still

work.

The next day, Williams went to see Nadia Noel, the human resources representative for Unit 300, and discussed her meeting with Baxter and Walker. Noel said that Williams had "signed a binding contract" stating that she was able to do the customer service representative job. Noel also told Williams that if she could no longer do the job, she could turn in her badge and could be rehired when she was able to work again. Williams told Noel that she wanted to keep her badge and continue working because she did not have any limitations.

Two days later, on August 14, 2008, Williams gave a note from her doctor to Walker, who in turn gave it to Baxter. That note stated, in relevant part, that Williams had the following medical restrictions:

(1) No shifts greater than 8 hours;
(2) No lifting, pushing, or pulling greater than 20 pounds;
(3) No prolonged standing greater than 3 hours without 5–10 minute breaks;
(4) No climbing, crawling, or working at heights that increase the chance of falling; (i.e., 3 or more step ladders or stepping stools).

At a meeting Williams, Baxter, and Walker had later that day, Baxter told Williams that he did not have any jobs available that could accommodate her restrictions and told her that she was terminated (or words to that effect). Williams said that she needed the job and could do it, and she asked Baxter to

4

ignore the note and forget that she had ever given it to him. According to her, Baxter refused to do that and stated, "no, it's a liability for this company to let you get out there on the truck, so you're fired."

Before telling Williams she was fired, Baxter did not check with his supervisors or the supervisors in other departments to determine if there was a light-duty job available for her. At his deposition, he said that he did not check because he knew Gate Gourmet was laying off employees at that time. But according to William Restituto, the general manager of Unit 300 (who testified as Gate Gourmet's corporate designee under Federal Rule of Civil Procedure 30(b)(6)), there were available light-duty jobs that Williams could have performed with her medical restrictions. And it was Gate Gourmet's policy to offer those jobs, when they were available, to employees with medical conditions, including pregnancy.

Later that day, August 14, 2008, Williams filed a union grievance in which she alleged that she was fired without just cause due to her pregnancy. A local union official faxed that grievance to Restituto the same day. The next day, Williams filed a charge with the Equal Employment Opportunity Commission alleging discrimination based on pregnancy and race. In that charge, she alleged that, after she provided Baxter with the note from her doctor, Baxter fired her

5

because she was pregnant and because Gate Gourmet had no light-duty positions available. Williams, who is white, also alleged that her firing was in "stark contrast" to how Gate Gourmet treated similarly situated non-white employees.

Restituto testified at his deposition that he received Williams' union grievance sometime between August 15 and August 18, 2008, and that he met with Noel about it on August 18. They discussed whether there was a light-duty position available for Williams and determined that there was one, a silverware wrapper position. It is undisputed that a silverware wrapper job was available on August 18, 2008, and that Williams could have done it while complying with her medical restrictions. Restituto told Noel to schedule a meeting with Williams as soon as possible to discuss that position because they had decided to offer it to her. Restituto thought that Noel would contact Williams that day, but apparently she did not.

That same day, Restituto, Noel, Baxter, and Walker met with Richard Jones, the regional human resources manager, to discuss Williams' union grievance. At that meeting, Jones told the others that he wanted "to make sure that she understands that she's not terminated[;] . . . I want to make crystal clear that she needs to know that she's not [terminated]." He also told them that Williams needed to be brought back in so they could discuss any light-duty job that was

6

available for her. Jones directed Noel and Walker to contact Williams as soon as possible and "get her back in here to talk to Mr. Restituto and [Noel]." Because Williams had filed a union grievance, Walker, the union steward, was told to schedule a meeting with her, Restituto, and Noel.

The next day, the EEOC mailed Williams' charge to Gate Gourmet. After Gate Gourmet received it, Noel referred that charge to the legal department. On August 21, which was two days after the EEOC mailed the charge, Williams returned to Gate Gourmet to pick up her paycheck and spoke with Walker. She had not been at work since Baxter told her on August 14 that she was fired, but on August 21 Walker told Williams that she had not been fired but was instead being placed on Family and Medical Leave Act leave. Walker asked Williams to go with her to fill out the paperwork, but Williams refused, saying she was still able to work and could not afford to be on unpaid leave.

Four days later, on August 25, 2008, Restituto gave Baxter a reprimand letter about his treatment of Williams. The letter stated, in part:

[Y]ou had [a] conversation with [Williams] that since she could not perform her work, she would be terminated.

. . . .

. . . . [Y]ou admitted telling [Williams] that she was terminated due to her medical restrictions. This not only violates Company

7

> Policy and Procedures but it violates discrimination [sic] based on Title VII.
>
> . . . .
>
> In addition, you did not obtain the permission of the General Manager to release [Williams]. In fact, [Williams] was not terminated and we have reached out so . . . she can apply for a leave of absence. The decision that you made in reference to [Williams] is totally unacceptable and will not be condoned in the future. In addition, your action[] has placed Gate Gourmet in a possible litigation situation.

Noel, who was involved with the investigation of Williams' discrimination claim, agreed with Restituto. Noel testified in her deposition that "pregnancy was a substantial or motivating factor in Baxter's decision to deny [Williams] a position which would accommodate her restrictions."

On August 28, 2008, two weeks after Baxter had told her she was fired, Williams had a telephone conversation with EEOC investigator Don Marcus. In that conversation he conveyed to her an offer from Gate Gourmet to pay her back pay and let her return to work if she would dismiss the EEOC charge. Williams asked what would happen if she refused to sign the release, and Marcus told her that getting the job was contingent on signing it. That same day, Williams also spoke with union steward Walker. Walker told Williams that they needed to meet the next day and said, "I'll get you to work in the silverware department." They

8

scheduled a meeting for the next afternoon.

Williams, however, missed that meeting because she was "held up in court"; she left a message for Walker informing her of that. Williams then called Noel and told her that she had missed the meeting due to an emergency. Noel told Williams that Gate Gourmet's legal department was working with the EEOC and said that she would contact Williams once that department and the EEOC had reached an agreement. Williams informed Noel that Walker had told her there was a job available for her. Noel replied that she did not know what the terms of the agreement were, that she could not "communicate anything" because she did not know, and that "[e]verything is at the legal level right now." She promised that "Once they finalize everything, it will be communicated to me and then I will get in contact with you." Noel never did. Other than the offer conveyed to Williams by the EEOC investigator, which was contingent on her dropping the EEOC charge, Gate Gourmet never offered Williams the silverware wrapper position or any other position.

The EEOC issued a right-to-sue letter to Williams, and she timely filed a complaint in Georgia Superior Court asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)–(2), and 42 U.S.C. § 1981, and also asserting state law negligence claims. Specifically, she claimed pregnancy

9

discrimination, race discrimination, retaliation, negligent hiring, negligent retention, negligent supervision, gross negligence, and negligence per se. Gate Gourmet removed the case to federal district court.

Williams filed a motion for summary judgment on her federal pregnancy discrimination, race discrimination, and retaliation claims, but not on her state law claims. Gate Gourmet then filed a cross-motion for summary judgment on all of Williams' claims. A magistrate judge issued a report recommending that the district court grant summary judgment to Williams on her retaliation claims and grant summary judgment to Gate Gourmet on Williams' pregnancy and race discrimination claims. The report also recommended that the court deny Gate Gourmet's motion for summary judgment on Williams' state law claims. Both parties filed objections to the magistrate judge's report and recommendations.

The district court granted Gate Gourmet's motion for summary judgment on all of Williams' claims. It concluded that Williams had failed to show direct evidence of discrimination based on pregnancy or race, and that she could not make an indirect case using circumstantial evidence because she had not identified a similarly situated employee outside the protected class who was treated differently. Further, the court reasoned that Williams had not rebutted Gate Gourmet's articulated nondiscriminatory reasons for firing her: Baxter believed

10

she could no longer do her job and believed there were no available light-duty positions. The court also concluded that, because Gate Gourmet had offered back pay and reinstatement in exchange for Williams dismissing her EEOC charge, Gate Gourmet had not retaliated against Williams. Finally, the court ruled that Williams' state law claims were derivative of her discrimination and retaliation claims. Williams filed a motion to reconsider, which the district court denied in all parts relevant to this appeal. Williams then filed this appeal.

## II.

This Court reviews <u>de novo</u> a district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. <u>Dixon v. Hallmark Cos.</u>, 627 F.3d 849, 854 (11th Cir. 2010). Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "'a reasonable jury could return a verdict for the nonmoving party.'" <u>Dixon</u>, 627 F.3d at 854 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)).

## III.

Williams alleges that Gate Gourmet terminated her and denied her a light-duty position because she was pregnant and because she is white. Her pregnancy

11

discrimination claim is based on Title VII, 42 U.S.C. § 2000e-2(a)(1), and her race discrimination claims are based on that provision and on 42 U.S.C. § 1981.

## A.

As amended by the Pregnancy Discrimination Act, Title VII prohibits employers from discriminating against employees because of pregnancy. 42 U.S.C. § 2000e-2(a)(1)–(2) (prohibiting discrimination "because of . . . sex"); id. § 2000e(k) ("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy . . . ."). We use the same analysis for claims of discrimination based on pregnancy that we use for claims of discrimination based on sex. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312–13 (11th Cir. 1996).

A plaintiff may use either direct or indirect evidence to show that her employer discriminated against her because of her pregnancy. See id. at 1313. "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (alterations and quotation marks omitted). "Indirect evidence is circumstantial evidence." Hamilton v. Southland Christian Sch., Inc., __ F.3d __, __, No. 11-13696, 2012 WL 1694589, at *3 (11th Cir. May 16, 2012). Williams argues that she has shown Baxter's discriminatory intent by both direct

12

and indirect evidence.

B.

We do not have to decide whether Williams has presented direct evidence because she has presented enough indirect or circumstantial evidence to survive summary judgment. A plaintiff typically makes a case of discrimination through indirect evidence using the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981). Armstrong, 33 F.3d at 1314. Under that framework, the plaintiff must make a prima facie case by showing that: (1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her. See id. If a plaintiff can present a prima facie case through circumstantial evidence, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions. See Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010). If the defendant satisfies this burden of production, the burden shifts back to the plaintiff, who must show that the articulated reason is merely a pretext for discrimination. Id. at 1244.

13

Gate Gourmet argues that Williams has not made out a prima facie case under the McDonnell Douglas framework because she has failed to show that employment or disciplinary policies were discriminatorily applied to her—she has not identified a nonpregnant comparator who was treated differently. The McDonnell Douglas framework is not, however, the only way to use circumstantial evidence to survive a motion for summary judgment, and a "plaintiff's failure to produce a comparator does not necessarily doom [her] case." Smith v.Lockheed-Martin, 644 F.3d 1321, 1328 (11th Cir. 2011); see also Hamilton, 2012 WL 1694589, at *3.

If a plaintiff "presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent," she "will always survive summary judgment." Lockheed-Martin, 644 F.3d at 1328. And a plaintiff may use "non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination" and thereby create a triable issue. Hamilton, 2012 WL 1694589, at *4; see also Lockheed Martin, 644 F.3d at 1328; Rioux v. City of Atlanta, 520 F.3d 1269, 1277 (11th Cir. 2008) (holding that circumstantial evidence was sufficient to establish a prima facie case of race discrimination even though the plaintiff did not present evidence of a comparator); cf. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010) ("The methods

14

of presenting a prima facie case are flexible and depend on the particular situation."). Whatever form it takes, if the circumstantial evidence is sufficient to raise "a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." Lockheed-Martin, 644 F.3d at 1328; accord Hamilton, 2012 WL 1694589, at *4–5.

Williams does not have to use the McDonnell Douglas framework to survive summary judgment because the record contains enough non-comparator evidence for a jury to reasonably infer that Baxter discriminated against Williams because she was pregnant. Baxter stated on August 11, 2008, that he knew Williams was pregnant, that eventually she would be unable to handle her job duties because of her pregnancy, and that Gate Gourmet had no light-duty job available for her if she could not do her job as a customer service representative. That same day, Walker told Williams to go to the doctor and bring back a note saying that she was able to work. Then on August 14, 2008, after Baxter read the note listing Williams' medical restrictions, he told Williams she was fired even though she insisted she was still able to do her job. Baxter did that without contacting his supervisors or those in other departments to determine if there was a job that Williams could do with her medical restrictions. He did it even though it was Gate Gourmet's policy to provide workers like Williams with light-duty jobs

15

when they were available.

Noel, the human resources director for Williams' unit, admitted in her deposition that Williams' pregnancy was a "substantial or motivating factor" in Baxter's decision to tell Williams she was fired instead of offering her a light-duty job.[3]  Gate Gourmet admits that what Baxter did was not based on any problem with Williams' work.[4]  And in its letter reprimanding Baxter, Gate Gourmet stated that by telling Williams she was fired because of her pregnancy-related medical restrictions Baxter had not only violated company policy but he had also acted in a way that was "totally unacceptable" and that constituted discrimination in violation of Title VII.

Viewing the record in the light most favorable to Williams, we are satisfied that she has presented enough circumstantial evidence to allow a jury to reasonably infer that Baxter's action in terminating her because of her pregnancy and his inaction in not attempting to find her a light-duty job were, as the letter reprimanding him stated, a violation of Title VII.  The district court's grant of

---

[3] Noel agreed in her deposition that it was accurate to state:  "Ms. Williams' pregnancy was a substantial or motivating factor in Baxter's decision to deny her a position which would accommodate her restrictions."

[4] Gate Gourmet admitted that it "has taken no actions in this matter that were taken as a result of misconduct and/or poor, deficient, substandard, and/or unsatisfactory work performance by [Williams]."

summary judgment to Gate Gourmet on Williams' Title VII claim for pregnancy discrimination was improper.

C.

Title VII also prohibits discrimination in employment "because of . . . race [or] color," 42 U.S.C. § 2000e-2(a)(1), (2), as does 42 U.S.C. § 1981, see Sanders v. Dobbs Houses, Inc., 431 F.2d 1097, 1099–100 (5th Cir. 1970).[5] Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Just as with discrimination based on pregnancy, a plaintiff may prove race discrimination through either direct or indirect evidence. See Crawford v. Carroll, 529 F.3d 961, 975–76 (11th Cir. 2008). Williams does not argue that she has any direct evidence of race discrimination; instead she argues that, using the McDonnell Douglas burden-shifting framework, she has indirect or circumstantial evidence of race discrimination. See Bryant v. Jones, 575 F.3d 1281, 1307–08 (11th Cir. 2009).

Williams contends that she has established a prima facie case by using Natasha Prevo as a comparator. Prevo is an African–American woman who held

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

the same position as Williams, worked in the same unit, and was given a light-duty job based on her pregnancy. It is unclear from the record, however, whether the decision to give Prevo a light-duty job was made by Baxter or by Restituto (both of whom are white). If Baxter did not make the decision to give Prevo the light-duty job, Williams and Prevo are probably not similarly situated. See Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) ("[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination.").

Because it does not matter to the result, we will assume, as the district court did, that Williams has established a prima facie case of race discrimination. Williams must still show that the reasons Gate Gourmet proffered for her termination—Baxter believed she was unable to do her job and believed there were no available light-duty jobs—were a pretext for discrimination based on race. That Gate Gourmet's proffered reasons might be untrue does not necessarily mean Williams can survive summary judgment. See Alvarez, 610 F.3d at 1264 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 2109 (2000)). It does not because even if the proffered reasons were false, Williams must still show that the actual reason she was terminated was race discrimination. See id. at 1265 (citing Burdine, 450 U.S. at 256, 101 S.Ct. at

18

1095); see also Reeves, 530 U.S. at 143, 120 S.Ct. at 2106 ("[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  And in attempting to satisfy this burden, the plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (citations and quotation marks omitted)).

The inference that Williams' evidence of pretext supports is that the reason she was fired instead of being given a light-duty job was her pregnancy, not the fact that she (like the decisionmaker) is white.  It follows that under the McDonnell Douglas framework Williams has not shown a genuine issue of material fact about whether Gate Gourmet intentionally discriminated against her based on her race.  See Reeves, 530 U.S. at 143, 120 S.Ct. at 2106.  Nor has she done so outside the McDonnell Douglas framework.  The district court properly granted summary judgment to Gate Gourmet on Williams' Title VII and 42 U.S.C. § 1981 race discrimination claims.

IV.

Retaliation against an employee who engages in statutorily protected

activity is barred under both Title VII and § 1981. See 42 U.S.C. § 2000e-3(a); CBOCS W., Inc. v. Humphries, 553 U.S. 442, 457, 128 S.Ct. 1951, 1961 (2008) (concluding that § 1981 encompasses retaliation claims); Bryant v. Jones, 575 F.3d 1281, 1301 (11th Cir. 2009) (discussing the right of action for retaliation under § 1981 both pre- and post-Humphries). A plaintiff establishes a prima facie case of retaliation by showing that: (1) she "engaged in statutorily protected activity"; (2) she "suffered a materially adverse action"; and (3) "there was a causal connection between the protected activity and the adverse action." Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010); accord Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 978 n.52 (11th Cir. 2008).

Gate Gourmet admits, that its company policy was to offer available light-duty positions to employees with medical conditions. (Appellee Br. 19–20). Williams alleges that after Baxter told her she was terminated, Restituto (the unit's general manager) and Jones (the regional human resources manager) instructed Noel (the unit's human resources representative) to offer Williams a light-duty position as a silverware wrapper. Once Gate Gourmet learned she had filed an EEOC charge, however, it offered her that position only on the condition that she drop her EEOC charge. Gate Gourmet does not dispute that Williams engaged in a statutorily protected activity when she filed the charge. It argues instead that

20

Williams did not suffer a materially adverse action that can be causally connected to the filing of the charge.

We first determine whether refusing to give Williams the light-duty position was a materially adverse action. It was. Gate Gourmet argues that, because Williams was terminated on August 14, 2008, its decision not to give her the light-duty position cannot be a materially adverse action since it was not required to reinstate Williams to a different position after terminating her. Any offer to do so was, therefore, an attempt to settle her EEOC charge, and offers to settle EEOC charges are not retaliatory.

Gate Gourmet's argument suffers from the fact that Gate Gourmet itself has put evidence into the record from which a jury could reasonably find that Williams was not fired on August 14, 2008. In the Joint Preliminary Planning Report and Scheduling Order and in Defendant's Initial Disclosures, Gate Gourmet stated: "Mr. Baxter did not have authority to terminate [Williams]. Therefore, [Williams'] employment was never terminated. In fact, [Gate Gourmet] never removed [Williams] from its employment database and still acknowledges [Williams] as an employee in its employment database." (R5:5–6; R11:3). And when Restituto testified as Gate Gourmet's corporate designee under Federal Rule of Civil Procedure 30(b)(6), he said: (1) "Williams is still in our system and is still

21

part of our facility"; (2) "[Williams] was never terminated"; (3) "[Williams is] active in our system"; (4) "Williams was not officially terminated from our payroll system, because Ms. Williams was never officially terminated to begin with"; and (5) "Williams wasn't terminated because I did not officially terminate her." (Restituto Dep. R168:256; R168-1:313–14). Both Noel and Jones also testified in their depositions that Williams was not terminated. (Noel Dep. R162:367; Jones Dep. R147-1:159–60). Because we must accept those statements as true for purposes of summary judgment on Williams' retaliation claim, we have to assume here that she was not fired on August 14, 2008.[6]

An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006) (quotation marks omitted). Withholding a position that an employee would otherwise receive under company policy, particularly when it results in her no longer having a job, might well dissuade a reasonable worker from making or

---

[6] Of course, we accepted as true just the opposite—that Williams was fired on August 14, 2008—when we decided whether her pregnancy discrimination claim could survive summary judgment. But we did not find that she was fired on that date, only that there is sufficient evidence for a jury to find that she was. What we find here is not inconsistent with that. It is not inconsistent because the assertions that Gate Gourmet has made about Baxter not having authority to fire Williams is enough evidence for a jury to find that she was not fired on August 14 despite Baxter telling her that she was. There is also enough evidence for a jury to find that she was fired on August 14.

22

supporting a charge of discrimination.

Gate Gourmet concedes in its brief to this Court that "an employer may not withhold standard employee benefits because an employee has refused to waive [her] rights under the anti-discrimination statutes," (Appellee Br. 18) (quotation marks omitted), and it recognizes that a light-duty job is a "benefit," (Appellee Br. 18–20). As we have mentioned, Gate Gourmet also concedes that it was company policy to give available light-duty jobs to employees who needed them because of a medical condition, (Appellee Br. 19–20), and it admitted through its Rule 30(b)(6) representative's testimony that a light-duty job was available on August 18, 2008, (Restituto Dep. R168:157–58, 167–68). Gate Gourmet argues, however, that "this benefit was not . . . promised or owed " to Williams because she had already been fired, and Gate Gourmet has no policy to provide reinstatement. (Appellee Br. 18) (quotation marks omitted). But as we have just discussed, the record contains assertions by Gate Gourmet that as of August 18, 2008, Williams had not been fired and was still an employee, and neither party disputes that Williams was not given a light-duty job.

The materially adverse action must, however, be "causally connected" to Williams' EEOC charge. Gate Gourmet asserts that the decision not to give her a light-duty job took place no later than August 18, 2008, and the EEOC did not

23

mail Gate Gourmet notice of the charge until August 19, 2008. The denial of a light-duty job cannot, therefore, be a materially adverse action causally connected to her EEOC charge because it happened before Gate Gourmet got notice of the charge and an effect cannot precede the cause. Cf. Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that where an employer contemplated an adverse action before the employee engaged in protected activity, the temporal proximity between the protected activity and the adverse action did not show causation).

That argument fails as well, not as a matter of logic but as a matter of fact. Viewed in the light most favorable to Williams, the evidence would allow a reasonable jury to find that the following sequence of events occurred:

(1) August 14, 2008: Baxter tells Williams that she is terminated;

(2) August 15, 2008: Williams files an EEOC charge;

(3) August 18, 2008: Restituto and Noel meet, determine there is an available light-duty position as a silverware wrapper and decide to offer that position to Williams;

(4) August 18, 2008: Later that same day, Restituto, Noel, Baxter, Walker, and Jones meet, and Jones says that Williams needs to be brought back in to discuss any available light-duty job;

(5) August 19, 2008: The EEOC mails notice of the charge to Gate Gourmet;

(6) August 20–28, 2008: At some point during this period, Gate Gourmet receives notice of the EEOC charge and refers it to its legal

department;

(7) August 28, 2008:  Don Marcus of the EEOC relays a conditional offer from Gate Gourmet to Williams:  drop the EEOC charge and Gate Gourmet will put her back to work and pay her back pay; Williams does not accept the offer;

(8) August 28, 2008:  Later that day, Walker schedules a meeting with Williams for the next day and tells her that she will be given a light-duty job in the silverware department;

(9) August 29, 2008:  Williams misses the scheduled meeting but has a conversation with Noel over the telephone in which Noel refuses to discuss the promised position in the silverware department because "[e]verything is at the legal level right now";

(10) Gate Gourmet never gives Williams the silverware wrapper position, another light-duty position, or any position at all.[7]

"We construe the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'"  Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1278 (11th Cir. 2008) (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)).  Particularly in light of that standard, a jury reasonably could find from the sequence of events that Gate Gourmet decided to unconditionally offer

---

[7] Gate Gourmet disputes a number of these facts, but there is enough evidence to create a genuine issue for the jury as to each of them.  See Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003) ("In ruling on a Rule 56 motion, the district court may not weigh the evidence or find facts.  Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party.").

Williams the light-duty silverware wrapper position and would have done so but for the fact that she filed an EEOC charge. Once it learned that she had, Gate Gourmet changed what would have been an unconditional offer into a conditional offer in which she could have the position (with back pay) only if she dropped the charge. When Williams would not drop it, Gate Gourmet rescinded the offer.[8] This permissible interpretation of the evidence creates a reasonable inference that the statutorily protected filing of and refusal to settle the EEOC charge caused Gate Gourmet to deny Williams a light-duty position, which is a materially adverse action. Accordingly, summary judgment should not have been granted against Williams on her Title VII and 42 U.S.C. § 1981 retaliation claims.

---

[8] Gate Gourmet's offer to give Williams a light-duty job in exchange for her dropping the EEOC charge also included the enticement of back pay. Gate Gourmet argues, and the district court concluded, that because the conditional offer included back pay, it was a settlement offer, and settlement offers cannot be retaliation. It is true that they ordinarily cannot be. But what Gate Gourmet did was withhold from Williams a light-duty position, which is a benefit that she undisputedly would otherwise have received under company policy, and it allegedly did that solely because of her EEOC charge. Cf. Goldsmith, 513 F.3d at 1279 (concluding that it was retaliatory to terminate an employee for refusing to sign an arbitration agreement that would have covered his pending discrimination charge).

26

V.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Gate Gourmet on Williams' claims for race discrimination, but we reverse the district court's grant of summary judgment to Gate Gourmet on Williams' claims for pregnancy discrimination and retaliation.

The district court granted Gate Gourmet's motion for summary judgment on Williams' state law claims because it concluded they were derivative of the federal discrimination and retaliation claims that the court granted summary judgment against.[9] Therefore, we affirm the district court's grant of summary judgment to Gate Gourmet on the state law claims to the extent they are based on Williams' claims for race discrimination, but we reverse the district court's grant of summary judgment to Gate Gourmet on the state law claims to the extent they are based on Williams' claims for pregnancy discrimination and retaliation, and we remand the case for further consideration of those claims.

The district court also denied one of Williams' discovery motions as moot because it granted summary judgment to Gate Gourmet. We vacate that order and

---

[9] Williams' state law claims are based on either a violation of a federal statute or Gate Gourmet permitting its employees to discriminate. It does not appear that Georgia courts have ever recognized a common law duty to prevent employment discrimination. But if such a duty exists, violation of it would necessarily require discrimination to have occurred.

27

remand it to the district court for reconsideration in light of this opinion.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.**