[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10927
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-04406-ODE


TROY CROCKETT,

                                                        Plaintiff-Appellant,

versus

THE GEO GROUP, INC.,
d.b.a. GEO Transport, Inc.,

                                                        Defendant-Appellee,

ANTHONY HARRIS,

                                                        Defendant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 5, 2014)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Troy Crockett, proceeding pro se, challenges the district court's decision to grant summary judgment in favor of his former employer, The GEO Group, Inc. (GEO), on his claims of retaliatory termination under Title VII of the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000e-2 and 2000e-3, and under 42 U.S.C. § 1981.[1]  He also appeals the district court's denial of his motion to reconsider its earlier denial of his motion to amend his complaint to reinstate voluntarily dismissed claims under the Americans with Disabilities Act (ADA).  After careful consideration, we affirm.

I.

GEO, pursuant to a contract with the federal government, operates a prison in Lovejoy, Georgia.  The contract requires GEO to provide armed guards and transportation services as necessary, and also to provide security around the perimeter of the prison.  GEO hires people as "Transportation Officers," who are responsible for performing all of these duties.  Before October 2010, GEO subcontracted with MVM, Inc., to provide the transportation services rather than

---

[1] Crockett also argued that he suffered other types of adverse employment actions in violation of Title VII beyond the retaliatory termination.  However, his brief on appeal challenges only the district court's resolution of the retaliatory termination claim.  Issues not raised in an appellant's initial brief are considered abandoned, even for pro se appellants. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam).

2

providing those services itself.  After October 2010, when GEO began providing more transportation services itself, it hired many people who previously worked at MVM as Transportation Officers.

Crockett worked at MVM from December 2007 through October 2010.  He was then hired for the position of Transportation Officer by GEO when it brought the majority of the transportation services in-house.  According to Crockett, GEO fired him on October 17, 2011 because he participated in protected activities while he was employed at MVM and GEO.  Those protected activities include filing two Equal Employment Opportunity Commission (EEOC) complaints (one in December 2010 while he was employed at MVM and one on September 19, 2011 while he was employed at GEO),[2] as well as several internal grievances alleging discriminatory treatment from January to September 2011.

GEO argued to the district court that it terminated Crockett only after an internal investigation confirmed that he abandoned his post when he was supposed to be patrolling the perimeter of the prison on July 17, 2011.  According to GEO, Transportation Officers assigned to patrol the perimeter must do so either in a company vehicle or on foot as necessary.  However, Alexander Satcher, one of Crockett's supervisors, saw Crockett sitting in his personal vehicle in the prison's

---

[2] GEO's statement of undisputed facts indicates that Crockett filed three EEOC complaints during his employment with the company.  This statement does not conform to the record before us.  The third complaint is dated October 21, 2011, four days after his termination.

3

parking lot instead of patrolling the perimeter. Satcher reported the incident to Warden Ralph Cherry, who referred the report to the Office of Professional Responsibility for investigation. According to Cherry, he was aware of the December 2010 EEOC complaint but was not aware of any other EEOC complaints or Crockett's most recent internal grievance at the time he referred the incident for investigation.

The Office of Professional Responsibility investigated the incident and sustained the allegations that Crockett had abandoned his post. Based on this, Cherry recommended to GEO's Human Resources Director that Crockett be terminated. The Human Resources Director approved the recommendation, and Crockett was terminated effective October 17, 2011.

Crockett does not dispute that he abandoned his company-issued vehicle and sat in his personal vehicle in the parking lot on July 17, 2011. Rather, he explains that, due to his size, the company-issued vehicle available to him that day was too small to accommodate him without causing him pain. He reported this problem to Satcher, who advised him to work with another officer on duty to try to switch automobiles. However, Crockett and the other officer were not able to work out an arrangement, and Crockett was forced to continue duty in a vehicle not suited to his frame.

4

In Crockett's first amended complaint, he alleged both that he had been retaliated against based on protected activity and that GEO violated the ADA when it failed to accommodate his request for a larger vehicle. However, Crockett voluntarily dismissed his ADA claims without prejudice on February 28, 2013, just after he was deposed and about three weeks before the end of discovery.[3] On March 17, two days before discovery was supposed to end, Crockett moved to reinstate the claims because he "underwent a medical examination" on March 15 that revealed information relevant to his ADA claims, namely his weight. Based on his weight on March 15, 2013, Crockett surmised that his weight in July 2011 was higher than he estimated when he was deposed, giving him a stronger case for disability under the ADA.

The district court denied Crockett's motion to reinstate the claims because he had not shown good cause to amend his complaint outside the deadline for amending pleadings. The district court noted that there was no reason Crockett couldn't have discovered his weight before his March 15 medical examination. Beyond that, the district court concluded that to reinstate the ADA claims at that time would prejudice GEO because it would further delay the litigation, and that an amendment would be futile.

---

[3] Although Crockett is proceeding pro se on appeal, he was represented by counsel at the time the ADA claims were voluntarily dismissed.

After the district court denied Crockett's motion to amend his complaint, GEO filed its motion for summary judgment.  In his response to GEO's motion, Crockett asked the court to reconsider its order denying his request to amend his complaint out of time.  The district court denied Crockett's request and granted summary judgment in favor of GEO on all the remaining claims.  Relevant here, the district court found that Crockett had not produced any evidence creating a genuine issue of material fact about the legitimacy of GEO's non-retaliatory reason for firing him.  In this appeal, Crockett challenges both the denial of his motion for reconsideration and the grant of summary judgment on his retaliatory termination claim.

## II.

We first consider Crockett's argument that the district court should have granted his motion for reconsideration and allowed him to reinstate the ADA claims he previously dismissed voluntarily.  "[W]e will only reverse a district court's denial of a motion to amend in instances in which the district court has clearly abused its discretion."  Smith v. Sch. Bd. of Orange Cnty., 487 F.3d 1361, 1366 (11th Cir. 2007) (per curiam) (quotation marks omitted).  A district court abuses its discretion when it "applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." United States v. Brown, 415 F.3d 1257, 1266 (11th Cir. 2005).

6

Here, the district court required Crockett to show good cause why his motion to amend should be granted, and found that the evidence upon which Crockett relied could have been discovered with reasonable diligence before he voluntarily dismissed his ADA complaint. This is a straightforward application of this Court's rule that where, as here, "the motion to amend is filed after the deadline for filing such motions, . . . the party must show good cause why leave to amend the complaint should be granted." Smith, 487 F.3d at 1366. This Court has said that where new facts provide the basis for the out-of-time amendment, the party should offer an explanation for "why those facts previously were undiscoverable." Id. at 1367. In light of this precedent, the denial of the motion to amend the complaint was not an abuse of discretion, and neither was the denial of the motion for reconsideration.

III.

Next, we turn to Crockett's argument that the district court erroneously granted GEO's motion for summary judgment. This Court reviews de novo the grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. Crawford v. Carroll, 529 F.3d 961, 964 (11th Cir. 2008). Summary judgment is only appropriate if the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A mere scintilla

7

of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir. 2006) (quotation marks omitted).

To make out a prima facie case of retaliatory termination under both § 1981 and Title VII, a plaintiff relying on indirect or circumstantial evidence must first show that he engaged in a statutorily protected activity and that there is a causal connection between that activity and his termination. Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1255, 1257–58 (11th Cir. 2012). Once a plaintiff makes his prima facie case, the burden shifts to the defendant to produce a legitimate, non-retaliatory reason for the termination. See id. at 1255. If the defendant meets his burden, the burden shifts back to the plaintiff to demonstrate that the articulated reason is mere pretext for retaliation. Id. The inquiry at this stage asks whether the plaintiff has produced "reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons were not what actually motivated its conduct." Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001) (quotation marks omitted). Conclusory allegations of retaliation, without more, are not sufficient to carry a plaintiff's burden to show pretext. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996).

Here, GEO has produced evidence of a non-retaliatory reason for Crockett's termination—abandonment of his post. In response, Crockett has pointed to no evidence creating a genuine issue of material fact as to whether that reason was mere pretext. Crockett admits that he abandoned his post, but argues that reasonable jurors could find that Satcher's decision to file the incident report, which resulted in his termination, was pretext for retaliation, and this retaliation should be imputed to GEO. See Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999) (per curiam) (describing the "cat's paw" theory of retaliation, which imputes the retaliatory motivation of employees to neutral decisionmakers where appropriate).

However, Satcher's incident report did not recommend that Crockett be terminated, and instead recommended more lenient disciplinary action. After the neutral internal investigation, Cherry rejected Satcher's recommendation to discipline Crockett and recommended that Crockett be terminated instead. At the time Cherry recommended termination, he was aware of only the December 2010 EEOC complaint, and not the internal grievances or the September 2011 EEOC complaint. Cf. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (noting that if there is substantial delay between the plaintiff's protected activity known to the defendant and the adverse action, the plaintiff's retaliation claim cannot survive based on the temporal proximity of the events alone). Thus, the evidence shows

9

that Cherry's decision to recommend termination was honestly based on the security risk inherent in Crockett's abandonment of his security post, and Crockett has not pointed to evidence sufficient to undermine the validity of that reason for his termination.

On this record, Crockett has not met his burden to show a genuine issue about whether Cherry's proffered reason for recommending termination is mere pretext for retaliation. The district court's decision to grant summary judgment in GEO's favor is therefore due to be affirmed. So, too, is the decision to deny Crockett's motion for reconsideration.

**AFFIRMED.**