[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15685
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-22666-CMA

STACEY MEYER,
individually,

Plaintiff-Appellant,

versus

SECRETARY, U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 17, 2014)

Before ED CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

Stacey Meyer appeals the district court's grant of summary judgment in

favor of her former employer, the United States Department of Health and Human Services (HHS).  She brought three claims against HHS under the antidiscrimination provision of the Rehabilitation Act of 1973 (RA).[1]  See 29 U.S.C. § 794.  She alleged that HHS committed three separate violations of the RA by:  terminating her, failing to accommodate her disability, and retaliating against her for requesting an accommodation.

Meyer worked as a Consumer Safety Officer for the Food and Drug Administration (FDA).[2]  She suffers from social phobia, avoidant personality disorder, and dependent personality disorder.  In October 2006 she brought these disabilities to the attention of William Lyn, her supervisor at the time.  He responded by assigning her less field work and allowing her to work primarily at the FDA's office.  Despite those changes, Meyer began accumulating unscheduled absences.  After an official, written warning, Lyn placed her on leave restriction in August 2008.  Leave restriction required Meyer to report her arrival and departure times each day and to provide certification from a doctor any time she stayed home sick.  This lasted six months.

---

[1] Meyer also claimed that HHS discriminated against her on the basis of gender, in violation of Title VII of the Civil Rights Act.  See 42 U.S.C. § 2000e et seq.  She has not appealed the district court's ruling on that claim.

[2] Because the district court entered summary judgment against Meyer, we recount the facts in the light most favorable to her claims.  See Johnson v. Bd. of Regents, 263 F.3d 1234, 1242–43 (11th Cir. 2001).

2

In April 2010, Meyer's new supervisor, William Keck, again placed her on leave restriction for problems with her attendance.  This led Meyer to formally request a reasonable accommodation for her disabilities under the RA in July 2010.  See 29 U.S.C. § 794(d); 42 U.S.C. § 12112(b)(5)(A).  On September 14, 2010, Meyer and her union representatives met with Keck and Facundo Bernal, Keck's supervisor, to discuss accommodation options.  As a result of that meeting, Bernal allowed Meyer to work an "Any 80" schedule, which permitted her to adjust her daily schedule as long as she worked from 10:00 A.M. to 2:00 P.M., Monday through Friday, and a total of 80 hours every two weeks.  Shortly after Meyer's schedule change, the FDA and Meyer's union entered into a new collective bargaining agreement (CBA), which abolished the Any 80 schedule.  Bernal did not understand the effect of the new CBA and thought that he needed to change Meyer's Any 80 schedule, even though it was an accommodation for her disability and unrelated to the CBA.  About three weeks after the September 14 meeting he met with Meyer to explain that he was changing her accommodation to a "First 40" schedule, which permitted her to adjust her daily schedule as long as she worked from 10:00 A.M. to 2:00 P.M., Monday through Friday, and a total of 40 hours each week.

In October 2010 two FDA employees separately spoke with Keck, each alleging that she had been invited by Meyer to go to the park during work hours.

3

At Bernal's request, Keck investigated Meyer's daily schedule. He discovered that, when Meyer was in the field inspecting businesses, she would return to the office two to four hours after having left the business and would have put more miles on her vehicle than needed to drive to the business and back to the office. Bernal approached the FDA's director of the Florida District with Keck's findings. Calling Meyer's behavior "egregious," the Florida director reported it to the Southeast Regional director, and they decided to report Meyer to the Office of Internal Affairs. The Florida director contacted Internal Affairs, which decided to begin surveillance of Meyer. From November 31, 2010, to February 2, 2011, two Internal Affairs agents ran a surveillance operation of Meyer that revealed she had made 31 trips to the park during working hours over the course of 35 workdays, each time using a government-owned vehicle to get there. On February 3, 2011, the two agents met with Meyer to discuss their surveillance. At this meeting, Meyer lied to the agents about the frequency, duration, and purpose of these trips to the park.

On April 11, 2011, Keck sent Meyer a notice that he had proposed that Bernal terminate her. This notice charged three types of misconduct: (1) thirty-two instances of misuse of a government-owned vehicle, primarily for trips to the park; (2) providing misleading information to the two agents about her trips to the park; and (3) twenty-eight instances of misrepresenting time and attendance

4

records between November 30, 2010, and January 26, 2011, resulting in records that over-reported her time worked during that period by about 43 hours. After Meyer had responded to that notice, Bernal reviewed both it and her response to it, and then issued a final decision to terminate Meyer on July 12, 2011. Meyer responded by filing this lawsuit.

We review de novo the grant of summary judgment against Meyer, applying the same legal standard that the district court used and drawing all factual inferences in the light most favorable to Meyer. See Johnson v. Bd. of Regents, 263 F.3d 1234, 1242–43 (11th Cir. 2001). To show that the district court improperly granted summary judgment, Meyer must present more than a mere scintilla of evidence supporting her position. She must instead make a sufficient showing that a jury could reasonably find for her. Brooks v. Cnty. Comm'n, 446 F.3d 1160, 1162 (11th Cir. 2006).

I.

Meyer first contends that her termination constituted disability-based discrimination in violation of the RA. The RA prohibits federal employers from subjecting an "otherwise qualified person with a disability" to discrimination — including discrimination in the discharge of employees — "solely by reason of her

5

or his disability." 29 U.S.C. § 794(a); see 42 U.S.C. § 12112(a).[3] We apply the plain meaning of the phrase "solely by reason of," and Meyer cannot prevail if she shows that HHS based her termination partially on her disability and partially on other factors.[4] See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) ("It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability."). Meyer may create a genuine issue of material fact about whether she was terminated solely by reason of her disability with either direct or circumstantial evidence. See EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). She attempts to use both.

### A.

As direct evidence of disability discrimination, Meyer presents comments made by Bernal and Keck. Direct evidence must prove "without inference or presumption" that HHS terminated her solely by reason of her disability. See Joe's Stone Crabs, 296 F.3d at 1272 (quotation marks omitted). She first asserts that comments made by Bernal during their September 14 meeting are such evidence. That meeting was held at Meyer's request for the sole purpose of discussing

---

[3] The RA expressly adopts the Americans with Disabilities Act's (ADA) standards for determining violations of the law. 29 U.S.C. § 794(d). For that reason, we apply the RA in light of the ADA itself and our precedents interpreting that statute. See Cash v. Smith, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.").

[4] HHS concedes that Meyer is an "otherwise qualified person with a disability." The only issue before us, then, is whether HHS terminated Meyer "solely by reason of" her disability.

options for reasonably accommodating her disability. During that meeting, Bernal referred to her as a "liability" and questioned her ability to do field work "if she has this inability to communicate with others." But that meeting did not result in any adverse action against Meyer. Quite the opposite: Bernal granted her request for a reasonable accommodation. To take those comments as evidence of discriminatory intent, we would have to presume that Bernal harbored discriminatory motives against Meyer despite his actions to the contrary. And if we must presume those comments reflected Bernal's discriminatory intent, they are not direct evidence of discrimination.

She also points to crude comments by Keck, who on two occasions told her to "shake [her] ass" to avoid "this problem out there in the field." Meyer asserts that Keck's reference to her "problem" is the inappropriate part of this comment. She sees it as a reference to her disability. But she does not identify the exact "problem" Keck was referencing, which means she has asked us to infer that he referred to a disability-related problem. If we must infer that Keck's comment referred to her disability, it is not direct evidence of discrimination.

## B.

Because she has produced no similarly situated comparator, Meyer does not rely on the familiar burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973). She instead attempts to create a

7

genuine issue of material fact using the "mosaic theory" of circumstantial evidence.  See Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).  Under this approach, "[i]f a plaintiff 'presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent,' she 'will always survive summary judgment.'"  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012) (quoting Smith, 644 F.3d at 1328).

Meyer's RA claim cannot survive summary judgment under the mosaic theory unless she presents enough circumstantial evidence to raise a reasonable inference that HHS terminated her "solely by reason of" her disability.  See 29 U.S.C. § 794(a); Ellis, 432 F.3d at 1326 ("It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability.").  So her circumstantial evidence must undermine the undisputed evidence that HHS actually terminated her because she violated agency policy.  See Gate Gourmet, 683 F.3d at 1255–56; Smith, 644 F.3d at 1328.  Meyer does not dispute that the two employees who initially reported her policy violations played no role in her ongoing discussions with HHS about her disability and reasonable accommodations.  She does not dispute that the Florida District director, who called her policy violations "egregious," did not know about her disability.  She does not dispute that the Southeast Regional director, who along with the Florida director referred her case to Internal Affairs, did not know about her disability.

8

She does not dispute that the Internal Affairs investigators assigned to her case did not know about her disability.  And she does not dispute that she committed the violations of HHS policy discovered by those investigators and upon which Bernal relied when he terminated her.  Meyer's circumstantial mosaic must, despite that undisputed evidence, allow a reasonable jury to infer that HHS terminated her solely by reason of her disability.

In her attempt to meet this burden, she lists a handful of incidents without drawing any connection between them, failing to show how they comprise "a convincing mosaic of circumstantial evidence" of discriminatory intent.  See Smith, 644 F.3d at 1328 (quotation marks omitted).  She starts with the same comments by Bernal and Keck that have already been discussed, now using them as circumstantial instead of direct evidence of discrimination.  She builds on those comments with evidence of HHS's "repeated revocation[s]" of her reasonable accommodations, pointing to three incidents in particular:  (1) Keck's decision to assign her more field work, (2) Bernal's decision to change her schedule, and (3) Keck's refusal to allow her to move to a less-exposed cubicle.  She finishes her mosaic with Bernal's decision to report her to Internal Affairs and his failure to explain her disability and accommodation to the investigators.

Meyer's mosaic of evidence does nothing to discredit the undisputed evidence that HHS terminated her at least partly because she violated agency

9

policy.  It may suggest that Bernal and Keck harbored some disability-based hostility against her.  It could even be read to suggest that Bernal referred Meyer to his supervisors at least partly by reason of that hostility.  But it does not contradict the undisputed evidence that Meyer's policy violations at least partially motivated HHS's decision to terminate her.  If she shows only that her termination "was based <u>partly</u> on [her] disability," then her claim fails.  See <u>Ellis</u>, 432 F.3d at 1326 (emphasis added).  She must raise an inference that HHS terminated her "<u>solely</u> by reason of her . . . disability."  29 U.S.C. § 794(a) (emphasis added).  Because her mosaic of circumstantial evidence can do no more than raise an inference that HHS terminated her partly because of her disability and partly because of her violations of HHS policy, Meyer failed to establish a prima facie discrimination claim under the RA.

## II.

Meyer next contends that the district court erred by rejecting her claim that by switching her from the Any 80 schedule to the First 40 schedule, Bernal failed to provide her with a reasonable accommodation.[5]  The RA requires an employer to "mak[e] reasonable accommodations to the known physical or mental

---

[5] Meyer also claims that HHS failed to accommodate her when Keck assigned her more field work and when he refused to allow her to move to a less-exposed cubicle.  She made neither claim before the district court.  We therefore do not consider them.  See <u>Access Now, Inc. v. Sw. Airlines Co.</u>, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.") (quotation marks omitted).

limitations of an otherwise qualified individual with a disability."[6]  42 U.S.C. § 12112(b)(5)(A); Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1262 (11th Cir. 2007) ("[A]n employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA . . . .") (quotation marks omitted); see 29 U.S.C. § 794(d).  Meyer, however, has "the burden of identifying an accommodation that would allow [her] to perform the job," along with "the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997).  HHS had no obligation to accept the accommodations suggested by her.  See id. at 1285 ("[A]n employer is not required to accommodate an employee in any manner in which that employee desires.") (quotation marks omitted).

Meyer's disability could cause bouts of anxiety and depression lasting "a day or two, with the occasional longer period."  To accommodate this condition, she suggested that HHS allow her a flexible schedule, in particular the Any 80 schedule.  Bernal agreed to this suggestion.  About three weeks later, he changed his mind and her schedule, allowing her the First 40 schedule instead.  She asserts that because the First 40 schedule is less flexible than the Any 80 schedule, HHS

---

[6] Because HHS has conceded that Meyer is "an otherwise qualified individual with a disability," we address only the question of whether HHS failed to make "reasonable accommodations" for her.

has therefore failed to provide her with a reasonable accommodation.  But she has not argued that the First 40 schedule is itself not a reasonable accommodation, just that the Any 80 schedule would be better.  HHS had no obligation to provide her "the maximum accommodation . . . possible," nor was she "entitled to the accommodation of her choice, but only a reasonable accommodation."  See id. (quotation marks omitted).

Meyer tries to dodge her failure to show that the First 40 schedule is unreasonable by arguing that Bernal "failed to engage [her] in the interactive process required under the [RA]."  But she cannot evade summary judgment with this argument.  The applicable regulation suggests that to determine an appropriate reasonable accommodation "it may be necessary for [the employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation."  29 C.F.R. § 1630.2(o)(3).  In applying this regulation, we have stated that "[l]iability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process."  Stewart, 117 F.3d at 1287.  Bernal did not obstruct the interactive process.  At the meeting on September 14, 2010, he and Meyer discussed her disability and options for accommodating it.  When he decided to

12

change her accommodation three weeks later, he spoke to Meyer about it. She did not tell Bernal that she disapproved of the change, nor did she request a different accommodation. If there was a failure in an interactive process, it was Meyer's actions that caused it, not Bernal's.

### III.

Meyer finally contends that HHS discriminated against her by changing her schedule and terminating her in retaliation for requesting a reasonable accommodation and for filing charges of discrimination with the EEOC. See 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge . . . under this chapter."); 29 U.S.C. § 794(d). To establish a prima facie retaliation claim, Meyer must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) the protected activity was causally connected to the adverse employment action. Stewart, 117 F.3d at 1287. Meyer met the first requirement in two ways: requesting a reasonable accommodation and filing charges of discrimination with the EEOC. See 42 U.S.C. § 12203(a); Standard v. A.B.E.L. Servs., Inc., 161 F.3d. 1318, 1328 (11th Cir. 1998) (holding that a request for a reasonable accommodation is a "statutorily protected activity" only if the plaintiff "had a good faith, objectively reasonable belief that he was entitled to those

accommodations"). To prove the causal connection between those activities and HHS's termination of her, Meyer relies on their "temporal proximity." See Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) ("A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case.").

First, Meyer highlights the three weeks between Bernal's alleged hostility toward her in the reasonable accommodation meeting and his decision to place her on the First 40 schedule instead of the Any 80 schedule. She asserts that this "close temporal proximity" creates a triable retaliation issue. See id. We disagree. Meyer illogically asserts that Bernal retaliated against her for requesting a reasonable accommodation by agreeing to meet with her to discuss that request, and then in further retaliation, he agreed to her request. Only after those two steps did he alter the terms of her accommodation, providing her with a schedule that she does not dispute is itself a reasonable accommodation. "Close temporal proximity" cannot overcome the illogic of her argument.

Meyer's second retaliation argument — that HHS terminated her because she filed charges of discrimination with the EEOC — again relies on temporal proximity to show causation. Meyer filed an informal complaint on March 3, 2011, which resulted in a telephone conference between her, Bernal, Keck, and an EEOC counselor. She asserts that because Keck proposed her removal "only

14

seventeen days after the EEOC conference call," and because Bernal approved her termination about two months later, she has shown enough temporal proximity to defeat summary judgment. See id.  But she has not.  The Internal Affairs investigation that led to her termination had finished a month before she complained to the EEOC.  Keck and Bernal already had all the evidence before them that they would eventually rely on when they terminated her.  HHS had already taken substantial steps towards terminating Meyer, which means she needed to show more than mere temporal proximity.  See Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1232 (11th Cir. 2006) ("When an employer contemplates a given action before the harassment takes place, temporal proximity between the action and the incident of harassment alone will not suffice to show causation.").

IV.

For those reasons, HHS was entitled to judgment as a matter of law.

**AFFIRMED.**