[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14032
_____

D.C. Docket No. 1:11-cv-02108-TWT

DARRYL P. CONNELLY,

Plaintiff-Appellant,

versus

METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY,
CHERYL KING,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 4, 2014)

Before PRYOR, Circuit Judge, WOOD,[*] Chief District Judge, and EDENFIELD,[**] District Judge.

PRYOR, Circuit Judge:

_____

[*] Honorable Lisa Godbey Wood, Chief United States District Judge for the Southern District of Georgia, sitting by designation.
[**] Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

The main issue in this appeal is whether the district court erred when it entered a judgment as a matter of law based on inconsistent jury verdicts. Darryl Connelly, a white male, appeals a judgment in favor of his former employer, the Metropolitan Atlanta Rapid Transit Authority, and against his complaint of racial discrimination and retaliation. Connelly worked for the Transit Authority for several years, but soon after the Transit Authority hired Cheryl King, a black female, as Connelly's supervisor, the Transit Authority fired Connelly on the ground that his services were no longer needed. Connelly sued the Transit Authority and King for racial discrimination and retaliation for protected activity. Before trial, the district court granted summary judgment against Connelly's claims of racial discrimination. At a trial of Connelly's claims of retaliation, the jury returned verdicts against the Transit Authority and in favor of King. The district court then granted judgment as a matter of law in favor of the Transit Authority on the ground that the jury verdicts were inconsistent. But the district court erred. To determine whether to grant a judgment as a matter of law, the district court should have considered only the sufficiency of the evidence in support of the verdict, not the consistency of that verdict with another. We vacate the judgment as a matter of law in favor of the Transit Authority and remand for the district court to reinstate the jury verdict against the Transit Authority for

2

retaliation. We also affirm the summary judgment against Connelly's claim of discrimination against King.

## I.  BACKGROUND

We describe the facts by reviewing the evidence in the light most favorable to Connelly. Connelly became an employee of the Transit Authority as a manager of property development in 2002, and the Transit Authority promoted him to director of transit-oriented development in 2006. He held that position until the Transit Authority fired him in 2009.

Connelly worked for four different supervisors at the Transit Authority before King became his supervisor. Three of those four supervisors were black, and the fourth supervisor was Hispanic. Each supervisor evaluated Connelly's work performance as either satisfactory or above, and none expressed concerns about his work performance. One supervisor presented him with an appreciation award and a journal in which she and other supervisors complimented his work performance. And the Transit Authority awarded merit-based pay increases to Connelly beginning in 2007. Connelly's last evaluation before King became his supervisor praised his integrity, leadership ability, decision making, and communication.

But other employees criticized Connelly's work performance. Coworkers complained that Connelly was not prompt and that paperwork often sat on his desk

3

for a long period of time. They also thought he had a hard time making decisions and that, when new management came to the Transit Authority, he was inflexible and resistant to change.

Connelly's work environment changed after Dr. Beverly Scott, a black female, became the new chief executive officer of the Transit Authority. As Connelly describes her management, Scott brought a "[r]acial [a]genda" to the Transit Authority. And when Scott hired King in 2008 as Connelly's supervisor, Connelly and King butted heads from the get-go. King pressured Connelly to complete assignments promptly and often chastised him for taking actions with which she disagreed. And she quickly began to hear complaints about Connelly from other employees and outside vendors.

On three occasions soon after King joined the Transit Authority, King referred to herself as a "mean black bitch" in Connelly's presence. On the first occasion, Connelly and a white consultant briefed King on a project and explained that they were behind, but could still meet their deadline. King was upset by that news and stated, "I'll bet you think I'm a mean black bitch." King later became frustrated by Connelly's use of expensive three-ring binders and again told Connelly that she was "a mean black bitch." And on a third occasion, King instructed Connelly to inform an uncooperative developer that "she was a mean black bitch."

4

After the first incident, Connelly became especially observant of how King treated white employees. He noticed that King often visited and joked with the black employees, but not the white ones. He also started a log of instances when he thought King was acting hostile or condescending, and he logged at least one incident when King was mean to another white employee. But most of the entries in Connelly's log had no racial overtones; for example, the first entry related to a criticism of the work of Connelly and Johnny Dunning, a black male.

On June 15, 2009, King and Connelly met to discuss some pending projects, and King brought up complaints that she had received about Connelly. She told Connelly that coworkers had complained that he was arrogant and failed to return phone calls. Connelly then asked King to provide him with specifics about the complaints, but she refused to provide names. He told King that she had been "railroading" him since she began working at the Transit Authority and that he intended to consult an attorney from the Department of Equal Opportunity, which handles claims of discrimination at the Transit Authority. King became "very angry, very upset," and "told [Connelly] that she was going to write [him] up."

Both Connelly and King took action after the meeting. Connelly drafted an internal complaint of racial discrimination on his work computer, but he never sent it because he was concerned about getting fired. For her part, King consulted Deborah Dawson, the assistant general manager for human resources at the Transit

5

Authority. King and Dawson decided that King should draft a memo to Connelly. The memo raised performance issues and invited a response from Connelly.

After King wrote the memo, she directed her assistant to hand deliver it to Connelly in a sealed envelope. But Connelly never received it. Following his failure to respond and additional performance problems, King—who had the authority to terminate Connelly as a final and non-reviewable decision— decided together with Dawson to fire Connelly. King and Dawson then met with Elizabeth O'Neill, the chief legal counsel for the Transit Authority, to discuss that decision.

At some point between meetings, King sent an email to Dawson that stated that O'Neill was concerned that Connelly "has already started building his case and thinks we need to act quickly." Dawson later agreed that they were all concerned about the potential of Connelly building a case against the Transit Authority.

On September 21, 2009, King, Dawson, and an in-house attorney fired Connelly. Connelly responded that he thought the termination was racially motivated and that King had been harassing him from the start. No one told Connelly that he was fired for cause.

The Transit Authority also reported to the Georgia Department of Labor that it discharged Connelly because "[h]is services were no longer needed; however, [Connelly] was NOT charged w[ith] violating any company policies or

procedures." King reviewed these responses with human resources before the Transit Authority submitted them to the Department of Labor, and Dawson agreed that this report was accurate. Internal records from the Transit Authority also stated that Connelly was not fired for unsatisfactory performance or insubordination.

Connelly's position at the Transit Authority remained vacant after he was fired. Then, in March 2011, the Transit Authority and King merged Connelly's former position, director of transit-oriented development, with the position of the director of regional services to create a new position, director of development and regional coordination. A white male filled that position.

A few months later, Connelly filed a complaint against the Transit Authority and King that alleged racial discrimination and retaliation for protected activity, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Connelly demanded a jury trial and sought damages and attorney's fees.

In a pretrial deposition, counsel for Connelly asked O'Neill about the email from King to Dawson in which King stated that O'Neill thought Connelly was building a case and that they needed to act. Counsel for the Transit Authority instructed O'Neill not to answer on the ground that the information was privileged. The district court held a telephone hearing and found that the Transit Authority had not waived attorney-client privilege concerning testimony from O'Neill on that subject. As a result, the parties could not pursue discovery on that subject.

7

The Transit Authority and King moved for summary judgment. The district court granted summary judgment in favor of the Transit Authority and King and against Connelly's claims of racial discrimination, but denied summary judgment against his claims of retaliation.

Before trial, both parties listed O'Neill as a potential witness. The Transit Authority and King filed a motion to strike O'Neill from Connelly's witness list, and Connelly filed a motion in limine to bar the admission of privileged testimony from O'Neill. The parties then stipulated that Connelly would not "ask questions [at trial] concerning Ms. O'Neill's privileged legal advice regarding the Connelly situation," and the defendants would abide by the limitations requested in Connelly's motion in limine.

At trial, Connelly argued that King was the final decision maker, such that the liability of the Transit Authority and King traveled together—either they both won or they both lost. The district court held extended discussions with counsel about whether to put one question on the verdict form that would link the liability of King and Transit Authority or whether to put two questions that would separate liability. Defense counsel argued that because King could not be liable under Title VII, the form needed to contain two questions. He also stated, "I do believe theoretically that it could—it is possible that the jury could find [the Transit Authority] retaliated against Mr. Connelly but not Ms. King." The district court

8

settled on a form with two questions: one asked whether the Transit Authority was liable and one asked whether King was liable. Connelly objected and argued that the form could result in inconsistent verdicts, but the district court overruled Connelly's objection. The jury returned a verdict against the Transit Authority for retaliation under Title VII and awarded Connelly $500,000 in compensatory damages, but the jury found in favor of King.

Defense counsel objected to the verdicts on the ground that they were legally inconsistent and argued that judgment should be entered in favor of both defendants because the Transit Authority could have been liable only if King too was liable. The court instructed him to address that issue in a post-judgment motion, and the Transit Authority filed a motion for judgment as a matter of law on the ground that the findings of the jury were inconsistent. The district court granted that motion, vacated the judgment, and directed the clerk to enter judgment against Connelly and in favor of both defendants.

## II. STANDARDS OF REVIEW

We review a judgment as a matter of law *de novo* and apply the same standard as the district court. *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005). "We review all of the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the non-moving party." *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). We also

review a summary judgment *de novo*. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999). "Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). We view that evidence in the light most favorable to the non-moving party too. *Id.*

### III. DISCUSSION

We divide our discussion in three parts. First, we explain that we must vacate the judgment as a matter of law in favor of the Transit Authority because the district court failed to consider the sufficiency of the evidence. The consistency of the jury verdicts was irrelevant. Second, we explain that we affirm the partial summary judgment in favor of King because Connelly failed to establish a prima facie case of racial discrimination. Third, we explain that Connelly waived his argument about the discovery ruling by the district court.

*A. The District Court Erred When It Entered Judgment as a Matter of Law in Favor of the Transit Authority.*

Connelly argues that the district court erred when it entered judgment as a matter of law in favor of the Transit Authority based on the allegedly inconsistent jury verdicts in favor of King and against the Transit Authority. He argues that Federal Rule of Civil Procedure 50, which governs motions for judgment as a matter of law, requires a district court to consider only the sufficiency of the

evidence. The Transit Authority responds, without citation to supporting authority, that a judgment as a matter of law was "the appropriate remedy in light of the circumstances of this case" and that holding otherwise "would work an injustice."

We agree with Connelly that the district court erred. "When a court considers a motion for judgment as a matter of law—even after the jury has rendered a verdict—only the sufficiency of the evidence matters. The jury's findings are irrelevant." *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (citation omitted); *see also Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1228 (11th Cir. 2007) ("[T]hat Rule 50(b) uses the word 'renewed' makes clear that a Rule 50(b) motion should be decided in the same way it would have been decided prior to the jury's verdict, and that the jury's particular findings are not germane to the legal analysis." (alteration omitted)). A district court may grant the motion before submitting the case to the jury "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have *a legally sufficient evidentiary basis* to find for the party on that issue." Fed. R. Civ. P. 50(a)(1) (emphasis added). A party may also renew a motion for judgment as a matter of law after trial, Fed. R. Civ. P. 50(b), but that motion must be based on the same grounds as the earlier motion: "Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion. The earlier motion informs the

11

opposing party of the challenge to the sufficiency of the evidence . . . ." Fed. R. Civ. P. 50 advisory committee's note (2006). The district court erred when it entered judgment as a matter of law in favor of the Transit Authority based on the allegedly inconsistent jury verdicts. We remand for the district court to reinstate the verdict against the Transit Authority on Connelly's claim of retaliation.

*B. The District Court Did Not Err When It Entered Summary Judgment in Favor of King on the Claim of Racial Discrimination.*

Connelly makes two arguments that the district court erred when it granted summary judgment against his claim of racial discrimination, but both fail. We address only Connelly's arguments about his claim of discrimination against King because the reinstatement of the jury verdict against the Transit Authority for retaliation renders moot Connelly's arguments about his claims of discrimination against the Transit Authority. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1279 (11th Cir. 2008) (explaining that a plaintiff may recover only once for wrongful termination under alternate theories of liability (citing *Edwards v. Bd. of Regents of Univ. of Ga.*, 2 F.3d 382, 382–83 (11th Cir. 1993))). We address each of Connelly's arguments about his claim of discrimination against King in turn.

Connelly first argues that the district court erred when it ruled that he failed to establish a prima facie case under the framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 1824 (1973), but we disagree. To establish a prima facie case of racially discriminatory discharge,

12

Connelly had to prove that "he was a member of a protected class; he was qualified for the job; he was terminated despite his qualifications; and after his termination the position remained open and the employer continued to seek applicants of similar qualifications." *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 (11th Cir. 1997); *see also Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (stating that an employee must be "replaced by a person outside his protected class" to establish prima facie case of discrimination (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824)). But his admission that he cannot "precisely" meet that standard foretells the result. The undisputed evidence establishes that King sought no applicants for Connelly's position after his termination. Instead, she left Connelly's position vacant for nearly a year and a half and eventually created a new position. And she filled that new position by hiring a white male. Those facts do not create a reasonable inference of racial discrimination.

Connelly also argues that he otherwise presented a mosaic of circumstantial evidence that creates a genuine issue of material fact, *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), but we again disagree. In *Smith*, the employee offered compelling evidence of his employer's motive to treat white employees less favorably, numerous incidents where the discipline of white employees varied considerably from that of black employees, and a "discipline

13

'matrix'" created by the employer that tracked the discipline and race of employees. *See Smith*, 644 F.3d at 1329–46. We ruled that record contained sufficient circumstantial evidence that the employer fired the employee because he was white. *Id.* at 1326–27. But the only evidence Connelly presented that is even remotely race-related are the three incidents in which King called *herself* a mean black bitch and testimony that King socialized with other black employees. We agree with the district court that "evidence of racial discrimination in this case is considerably weaker than the evidence presented in *Smith*," and it is insufficient to create a reasonable inference of racial discrimination.

### C. Connelly Waived His Argument About the Discovery Ruling by the District Court.

Connelly argues that the district court erred when it barred, as privileged, pretrial discovery about communications between O'Neill and King. He contends that discovery would have "afforded a potentially vast amount of additional information about the statements (and motivations) of King, along with Dawson and O'Neill," and that, "[a]t a minimum, the jury would have heard O'Neill testify as to whether she really gave the retaliatory advice King attributed to her in the . . . email." Connelly argues that, when the Transit Authority produced an email from King to Dawson that stated Connelly "has already started building his case and [O'Neill] thinks we need to act quickly," the Transit Authority waived attorney-client privilege for all communications on that subject matter. He also argues that

14

barring pretrial discovery about O'Neill's communications with King "left King free to testify, without contradiction, that O'Neill alone was to blame for any retaliatory purpose in the email King wrote."

Discovery rulings, although reviewable on appeal, rarely warrant "reversal save under very unusual circumstances," 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2006 (3d ed. 2010), but Connelly waived any complaint about this ruling. *See Edwards v. Kia Motors of Am., Inc.*, 486 F.3d 1229, 1233 n.6 (11th Cir. 2007) ("A waiver . . . is the voluntary and intentional relinquishment of a known right, claim, or privilege." (alteration in original) (internal quotation marks omitted)). Connelly stipulated before trial that O'Neill would testify about a narrow set of issues and that Connelly would not seek to elicit any privileged communications from O'Neill at trial. Consistent with that stipulation, Connelly called O'Neill to testify at trial, but did not ask her any questions about King's email. Connelly cannot now complain that the district court should have permitted him to ask questions in O'Neill's deposition about King's email when he failed to ask those questions—and in fact agreed not to ask those questions—when O'Neill testified at trial. *See G.I.C. Corp. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997) ("[P]arties are bound by their stipulations.").

15

## IV. CONCLUSION

We **VACATE** the judgment as a matter of law in favor of the Transit Authority and **REMAND** for the district court to reinstate the jury verdict in favor of Connelly and against the Transit Authority. We **AFFIRM** the summary judgment in favor of King and against Connelly's claim of racial discrimination.

16