[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15585
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00497-KD-C


DAVID J. POWELL,

Plaintiff-Appellant,

versus

AMERICAN REMEDIATION & ENVIRONMENTAL, INC.,
ROBERT WALLACE,
LEE EUBANKS,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(July 7, 2015)

Before TJOFLAT, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

The question this appeal presents is whether the District Court erred in granting summary judgment in favor of American Remediation & Environmental, Inc. ("AR&E") and two of its employees, Robert Wallace and Lee Eubanks, on David J. Powell's claim that his employment at AR&E was terminated on account of his race. We find no error in the court's decision and accordingly affirm.

I.

AR&E, operating from its location near Mobile, Alabama, performs environmental cleanup, industrial cleanup, hazardous waste, and pneumatic excavation at various plants and shipyards throughout the Gulf Coast. Powell went to work for AR&E as a technician on September 20, 2010.[1] At that time, he reviewed and signed AR&E's Drug-Free Workplace Policy, which states the following:

> The unlawful manufacture, distribution, possession or use of a controlled substance on the Company's premises or while conducting the Company's business off it's [*sic*] premises is absolutely prohibited. Violations of this policy will result in disciplinary action, up to and including termination, and may have legal consequences.

The events that led to Powell's termination began during the afternoon of January 18, 2012, when Powell and several of his coworkers were returning from a job site at the Chevron Corporation plant in Pascagoula, Mississippi, in a company

---

[1] At the time of his termination on January 19, 2012, Powell had been promoted to the position of "lead man" for a crew.

2

van driven by Jason Bishop, another AR&E employee. Later that evening, Bishop reported to his supervisor, Martin Corbeil, that while he was driving, he had looked in the rearview mirror and observed Powell (who is black) and Scott Kondroski (who is white) smoking something that "did not look like a cigarette and did not smell like a cigarette."

Corbeil immediately called his supervisor, Lee Eubanks, and the next day, Eubanks spoke to Bishop and Kondroski. According to Eubanks, Kondroski confirmed what Bishop had observed: that he and Powell were smoking "spice," *i.e.*, synthetic marijuana. Eubanks reported Krondroski's admission to Robert Wallace, AR&E's Vice President and General Manager, who relayed the report to AR&E's owner, Hunter George. George responded by telling Wallace that "they [Kondroski and Powell] both need to be let go immediately." Accordingly, Wallace instructed Eubanks to fire the two men.

Eubanks informed Kondroski the same day that his employment had been terminated. Eubanks then met with Powell, who told him that Kondroski's statement—that Powell and Kondroski were smoking spice—was false, and requested a drug test.[2] Eubanks relayed Powell's request to Wallace, who contacted Safety Plus, the drug-testing facility AR&E used. According to Wallace,

---

[2] To demonstrate his entitlement to such a test, Powell has pointed to the AR&E *Employee Policy Guide*, which provides that upon "a good-faith suspicion that an employee is in some way impaired by drugs or alcohol, management will require a mandatory drug screen."

Safety Plus "would not recommend [doing] the drug test because there's a fifty-fifty chance that [Powell will] pass or not pass." Wallace informed George of this, and George concluded that there was no need for the drug test; they had a written statement from Kondroski that he and Powell were smoking synthetic marijuana, and that was sufficient to warrant Powell's termination. Powell was let go, and Bishop replaced him.

## II.

On October 15, 2013, Powell brought this action against AR&E. His complaint contained a single count brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). It alleged AR&E "discriminated against [Powell] in violation of Title VII in that he received disparate treatment while employed with AR&E in the form of an abnormal amount of drug tests and *was terminated under false pretenses so his supervisor's relative could be promoted to Powell's position*." Compl. ¶ 20 (emphasis added). The relative to whom the complaint referred was Bishop: "Mr. Eubanks promoted his family member, [Jason] Bishop, to the position . . . despite Bishop's . . . lack of experience." Compl. ¶ 17.[3]

On May 29, 2014, with leave of court, Powell filed an amended complaint, which added two defendants, Wallace and Eubanks, and contained two counts. Count One replicated Count One of Powell's initial complaint. Count Two

---

[3] Bishop was the brother-in-law of the wife of one of Eubank's cousins.

asserted a claim for "Intentional Discrimination in Violation of 42 U.S.C. [§] 1981a," and alleged that "Defendants each violated this duty [under § 1981a] by intentionally discriminating against Mr. Powell, which discrimination was intentionally perpetrated because of Mr. Powell's race."  Am. Compl. ¶ 28.

The defendants denied liability and, following discovery, separately moved for summary judgment.  In entertaining their motions, the District Court concluded that Powell had abandoned his allegation that the defendants had discriminated against by subjecting him to "an abnormal amount of drug tests."  As for Powell's claim of discriminatory termination, the court found that, under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), Powell had established a *prima facie* case that AR&E had terminated his employment because of his race and that AR&E had proffered a non-discriminatory reason for terminating Powell's employment—namely, the violation of its drug policy.

The remaining issue to be decided was whether Powell had shown AR&E's proffered reason for terminating him to be a pretext for racial discrimination. Though finding that a genuine issue of material fact existed regarding whether AR&E "had a good faith, honest belief that Powell violated its drug policy," the court concluded that Powell could not successfully support a claim of race discrimination because he had offered no evidence that discrimination was the real

5

reason for his termination.  His claim, instead, was that he was fired "so that a

Caucasian relative of one of the higher ups could take his job."  Order at 1.  As the

court put it:

> Powell alleges that he was fired to make way for Eubanks'
> relative [Bishop] to take his job.  He then summarily asserts that this
> constitutes racial discrimination.  To support his race claim, Powell
> further asserts that because Wallace took Bishop's and Eubanks' word
> over his without investigating it, this shows that his termination was
> based on his race.  However, Powell does not reference any racial
> remarks, comments, environment, behavior, actions, etc. by [AR&E],
> Wallace and/or Eubanks.  Instead, Powell simply equates what could
> (at best) be construed as "taking sides" and/or "failing to investigate"
> as "being racist," simply because [AR&E] believed the person who
> reported the prohibited behavior.  This does not adequately support a
> claim for race discrimination.
>
> . . . .
>
> In the end, as presented to the Court, Powell's claim is not one
> of race discrimination.  Rather, in Powell's own words, his claim is
> about preferential treatment from a higher-up to one of his relatives
> (*i.e.*, nepotism): "I knew Lee Eubanks was trying to get rid of me to
> move Jason Bishop in, his relative in."  Nepotism is not actionable
> under Title VII or Section 1981, and "if anything, this evidence
> weakens Plaintiff's argument by suggesting that the true motivation
> for Powell's termination was not racism, but nepotism."

Order at 15–16 (alterations in original omitted) (citations omitted).

Having concluded that Powell had failed to make out a claim of racial

discrimination, the District Court granted the defendants summary judgment.[4]

---

[4]  The District Court and the parties overlooked the fact that "[i]ndividual capacity suits under Title VII are . . . inappropriate.  The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."  *Busby v. City*

Powell now appeals that ruling.  He raises four issues.  Only two are worthy of discussion, and they are actually the same issue: whether AR&E's proffered reason for terminating Powell was a pretext for race discrimination.[5]

## III.

We review a grant of summary judgment *de novo*, drawing all inferences in the light most favorable to the non-moving party below.  *Palm Beach Golf Center– Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1253 (11th Cir. 2015). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A factual dispute exists when a reasonable fact finder could find, by a preponderance of the evidence, that the non-moving party is entitled to a verdict. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012).

---

*of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991) (per curiam).  However, an employee may be held personally liable under 42 U.S.C. § 1981 for intentionally infringing rights that statute protects.  *See Faraca v. Clements*, 506 F.2d 956, 595 (5th Cir. 1975); *see also Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986) (holding that individuals may be personally liable "when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable"), *aff'd on other grounds,* 481 U.S. 604, 107 S. Ct. 2022 (1987).

[5]  Not worthy of discussion are Powell's arguments (1) that the District Court erred in relying on an unpublished opinion of this court in reaching its decision and (2) that the court erred in not finding that Powell demonstrated a "'convincing mosaic' of circumstantial evidence sufficient to create one or more triable issues of fact—an argument presented for the first time in his reply brief.  Powell's arguments that the District Court erred in granting the defendants summary judgment because (3) an issue of fact exists as to whether AR&E, Wallace, and Eubanks had "a good faith, honest belief that [Powell] violated [AR&E's] drug policy" and (4) "the employer's proffered, purportedly nondiscriminatory justification for terminating [Powell] appeared to have been false and lacking in credibility" both go to the question of pretext, which we address in the text.

7

Title VII provides that it is unlawful for an employer "to discharge any individual . . . because of such individual's race . . . . "  42 U.S.C. § 2000e–2(a)(1). Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  We engage in the same analysis to review claims under both statutes. *See, e.g.*, *Connelly v. Metro. Atl. Rapid Transit Auth.*, 764 F.3d 1358, 1362–65 (11th Cir. 2014) (evaluating claims under Title VII and 42 U.S.C. § 1981 together using the same analysis).

In cases involving circumstantial evidence of discrimination, as opposed to direct or statistical evidence, we use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.  *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012).  As we have written elsewhere,

> Under *McDonnell Douglas*, the plaintiff must initially establish a prima facie case, which generally consists of the following: 1) the plaintiff was a member of a protected class, 2) [the plaintiff] was qualified to do the job, 3) [the plaintiff] was subjected to an adverse employment action, and 4) similarly situated employees outside of the protected class were treated differently. . . .
> The prima facie case creates a presumption of discrimination, the role of which is to "force the defendant to come forward with some response."

*Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993)).  Once the plaintiff establishes a *prima facie* case, if the employer then meets its "burden of production . . . to articulate a

8

legitimate, non-discriminatory reason for its actions . . . , the presumption of discrimination disappears, and the burden shifts back to the plaintiff to demonstrate that the proffered reason" was a mere pretext for impermissible discrimination. *Id.* (quotation marks omitted).

To show pretext, "the plaintiff cannot recast the [employer's proffered] reason but must meet it head on and rebut it. The plaintiff must show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale. To do so, the plaintiff may rely on the evidence offered initially to establish the prima facie case." *Id.* at 1055–56 (quotation marks omitted). When an employer's proffered reason for its action is that the plaintiff violated a workplace rule, the plaintiff may show that this reason is a pretext by establishing that he did not violate the rule; that the employer did not have a good-faith, honest belief that he did violate the rule; and that impermissible discrimination was the real reason for the employer's action. *See Stone & Webster Constr., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1136 (11th Cir. 2012); *Brooks v. Cnty. Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006). In sum, to show pretext, "[a] plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Brooks*, 446 F.3d at 1163 (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1339 (11th Cir. 2000)).

9

Here, even assuming *arguendo* that AR&E and its employees did not believe that Powell violated AR&E's drug policy—that is, that he was fired for some other reason—Powell cannot prevail because he has failed to produce evidence that he was fired because of his race.  *See Brooks*, 446 F.3d at 1163 (quoting *Alexander*, 207 F.3d at 1339)).  Indeed, Powell's initial and amended complaint set the stage for the District Court's conclusion that his employment was terminated not because of his race, but rather "so his supervisor's relative could be promoted to Powell's position."  Compl. ¶ 20; *see* Am. Compl. ¶ 23.  The District Court correctly concluded that "[n]epotism is not actionable under Title VII or Section 1981."  *See Platner v. Cash & Thomas Contractors, Inc.*, 9088 F.2d 902, 905 (11th Cir. 1990); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1096 (6th Cir. 1996).  In that Powell's claim of racial discrimination failed as a matter of law, AR&E was entitled to summary judgment on the Title VII claim and AR&E, Wallace, and Eubanks were due summary judgment on the § 1981 claim.

AFFIRMED.