[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11081
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00340-RDP

KENNETH E. DUKES,

Plaintiff-Appellant,

versus

SHELBY COUNTY BOARD OF EDUCATION,
AUBREY MILLER,
President of the Board of Education in his official and individual capacities,
PEG HILL,
Vice President of the Board of Education in her official and individual capacities,
JIMMY BICE,
Member of the Board of Education in his official and individual capacity,
JANE HAMPTON,
Member of the Board of Education in her official and individual capacities, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 26, 2019)

Before MARTIN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Kenneth Dukes sued the Shelby County Board of Education, five of its members, Aubrey Miller, Peg Hill, Jimmy Bice, Jane Hampton, and Kevin Morris (collectively, the "Board Members"), and Randy Fuller, Shelby County Schools Superintendent. Dukes claims the Board, the Board Members, and Fuller discriminated against him by failing to promote him on account of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. §§ 1981 and 1983. The district court granted summary judgment for the Board, the Board Members, and Fuller. After careful review, we affirm.

## I.

Dukes, an African-American male, started working for Shelby County Schools in 1986 as a substitute bus driver. He became a regular bus driver in 1988. Although his stops and exact route are modified every year, his route has covered the same general area for at least the past 20 years. Between 1989 and 1994, Dukes also worked as a weekend and summer bus driver for a private company, Shelby County Area Transportation. In this position, he drove Shelby County residents to different medical appointments and transported campers from the airport to a university, where a soccer camp was held.

Dukes has also held a variety of leadership positions related to bus driving. He served on a committee that made recommendations about "bus routes, bus equipment, and apparatus needs, policies with respect to bus drivers" to the Board's Transportation Department. He also served as the President of the Shelby County Education Support Professionals, a division of the Alabama Education Association for Shelby County Schools. As President, Dukes was the "go-to person for all [of the other bus drivers' needs], including routing, bus equipment concerns, [and] student and parent problems and complaints." He was also the Alabama Education Association's representative for support personnel, which included the bus drivers employed by the Board. In both these positions, Dukes says the Board's Transportation Department contacted him for his expertise on bus routes, equipment, purchasing, and policies.

Dukes first applied to be a transportation route supervisor in 2012. A panel of four Shelby County Schools employees interviewed eleven candidates, including Dukes. The panel ultimately recommended Samuel "Brian" Miller for the position to Superintendent Fuller, who in turn recommended Brian Miller to the Board. Brian Miller said in his interview he had five years experience as a full-time substitute bus driver, which required him to drive throughout Shelby County. The panel therefore felt Brian Miller would be better suited for the position since

3

he had more experience driving in a variety of areas in Shelby County, as opposed to a single generalized area. The Board ultimately hired Brian Miller.[1]

After being rejected from the 2012 position, Dukes went and spoke with Aubrey Miller, the only African-American person on the Board. Dukes told Aubrey Miller there were no minorities in the Transportation Department, and that he applied for the position in 2012 but was rejected then as well. In response, Aubrey Miller told Dukes to let him know when Dukes applied for the transportation route supervisor position again and he "would keep an eye on it."

Dukes applied to be a transportation route supervisor again in 2014 when Shelby County Schools posted another vacancy, and informed Aubrey Miller he had applied. As with the 2012 transportation route supervisor position, a panel of four Shelby County Schools employees conducted interviews. Only three applicants and Dukes were officially "interviewed" for the position. Two of these applicants, including Brent Copes, had been interviewed two weeks before as part of the hiring process for a transportation coordinator position. Using a recent interview for a candidate was standard procedure when a candidate was interviewed for more than one position in a short timeframe. The panel decided to

---

[1] The Board initially posted a notice of vacancy for two transportation route supervisor positions. Ultimately, Shelby County Schools decided to fill only one position because Shelby County Schools needed to reduce expenses when one of Shelby County's municipalities, Alabaster, created a separate school district.

4

recommend Copes even though he had been disciplined for bringing his special needs child on a school field trip.  The panel noted Copes had previous leadership experience as a principal and assistant principal.

The Board voted to hire Copes as the transportation route supervisor at a special meeting two days before its regularly scheduled meeting.  Although there was a quorum at the special meeting, Aubrey Miller was not in attendance.  Tom Ferguson, the Shelby County Schools Deputy Superintendent, presented the panel's recommendation of Copes.  Ferguson testified he does not know why the special meeting was called or why the vote couldn't wait two days.[2]  The meeting minutes from the special meeting note Dukes was in attendance and gave the invocation, but Dukes says he was not at the meeting.

After being rejected from the 2014 route transportation position, Dukes and his friend, Bobby Pierson, spoke with Bice, a member of the Board who voted on Copes's promotion.  Pierson applied for the transportation route supervisor position in the early 2000s and had also been rejected.  Dukes and Pierson asked Bice why there were no African-American people in the Transportation Department, and Bice responded that a "black" would be considered if the Board ever received a decent resume from an African-American person.

---

[2] There is no explanation or any record evidence about why this meeting was called.

5

Dukes filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") on October 16, 2014.  The Board provided

incorrect information to the EEOC in responding to Dukes's EEOC charge.  The

Board misstated who interviewed Copes and also incorrectly told the EEOC that

Copes "developed a computer program that created transportation routes for the

bus routes."  Instead, Copes actually told the panel he used mapping software to

create bus routes.

After receiving his Notice of Rights, Dukes filed suit against the Board, the

Board Members, and Fuller on February 26, 2016.  They in turn moved for

summary judgment, and the district court granted their motion.  Dukes timely filed

this appeal.

## II.

We review <u>de novo</u> the grant of summary judgment.  <u>Alvarez v. Royal Atl.

Developers, Inc.</u>, 610 F.3d 1253, 1263 (11th Cir. 2010).  "We will affirm if, after

construing the evidence in the light most favorable to the non-moving party, we

find that no genuine issue of material fact exists and the moving party is entitled to

judgment as a matter of law."  <u>Id.</u> at 1263–64; Fed. R. Civ. P. 56(a).

### III.

Dukes claims intentional race-based discrimination, which can be proved through circumstantial evidence.[3]  A plaintiff can establish intentional discrimination through circumstantial evidence in two ways.  He may either satisfy the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), Flournoy v. CML-GA WB, LLC, 851 F.3d 1335, 1339 (11th Cir. 2017), or present a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination."  Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation marks omitted).  Dukes argues that he has shown intentional discrimination through both methods.  We address each in turn.

### A.

Under the McDonnell Douglas burden-shifting framework, the plaintiff bears the initial burden of establishing a prima facie case, which creates a rebuttable presumption of discriminatory intent.  Flournoy, 851 F.3d at 1339.  The defendant must then rebut that presumption by producing evidence of a legitimate, nondiscriminatory reason for its action.  Id.  If the defendant meets this burden of

---

[3] Dukes brings his race discrimination claims under both Title VII and § 1981.  Because we evaluate Title VII claims and § 1981 claims under the same analytic framework, we address Dukes's claims with the understanding that the same analysis applies to both.  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

production, the plaintiff must then establish that the defendant's proffered reason is only pretext for unlawful discrimination.  Id.; see also Kidd v. Mando Am. Corp., 731 F.3d 1196, 1202 (11th Cir. 2013).

The Board, the Board Members, and Fuller do not dispute Dukes established a prima facie case of race discrimination.  And Dukes does not dispute that they presented legitimate non-discriminatory reasons for hiring Miller and Copes over him.  Instead, they disagree about whether Dukes showed the Board's reasoning for hiring Miller and Copes was pretextual.

A reason for a legitimate employment decision is not pretext "unless it is shown both that the reason was false, and that discrimination was the real reason." Brooks v. Cty. Comm'n of Jefferson Cty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting St. Mary's Honors Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993)).  When pretext turns on the relative qualifications of a plaintiff and another successful applicant, we do not decide who the defendant employer should have hired.  Kidd, 731 F.3d at 1206.  Instead, we look to the qualifications of the plaintiff and the selected applicant and determine whether the difference between the two is of "such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  Id. (quotation marks omitted).  We do not reexamine business

8

judgments.  Id.  Our job is to determine "whether the employer gave an honest explanation to justify its hiring decision."  Id. at 1207 (quotation marks omitted).

Dukes argues the Board's proffered reasons for hiring Brian Miller and Copes over him were pretextual because no reasonable person could have hired them over him.  This argument does not prevail.  Both Brian Miller and Copes had bus driving experience, as did Dukes.  The panel decided to recommend Brian Miller instead because he drove a variety of routes as a full-time substitute bus driver, and the panel felt this experience made him a better candidate.  In contrast, Dukes drove the same route every day in the same area when he worked for Shelby County Schools and thus lacked that experience.  Although Dukes did have varied experience when he drove for Shelby County Area Transportation, he did not work in that position full-time or have the same depth of experience as Brian Miller.

Similarly, the panel felt Copes's experience as a principal and assistant principal made him a better candidate because the transportation supervisor position was a leadership position.  While it is true Dukes also had leadership experience, he never supervised other bus drivers, like Copes had done in the past.  And although Copes received a written reprimand, his conduct was not so egregious that a reasonable person could not have hired him over Dukes.  Considering these things, we cannot say that Brian Miller and Copes were so unqualified that no reasonable person could have selected them over Dukes.  If we

9

did, we would be questioning the Board's business judgment as to which experiences to value most, which we cannot do. See id. at 1207 (rejecting a plaintiff's pretext argument where her argument called into question the defendant company's business judgment but not the company's honesty in making hiring decisions).

**B.**

Dukes also argues the circumstances surrounding the Board's decision to hire Brian Miller and Copes over him show a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination. See Smith, 644 F.3d at 1328.

In addition to the burden-shifting framework established in McDonnell Douglas and Burdine, a plaintiff can also establish intentional discrimination by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Id.; see also Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1256 (11th Cir. 2012) (stating that summary judgment is not proper if the plaintiff's circumstantial evidence is sufficient to raise a reasonable inference that the employer discriminated against him or her).

In Smith, the record contained sufficient circumstantial evidence from which a jury could infer the employer displayed a racially discriminatory animus toward a

10

white employee by firing him. Id. at 1347. The employee offered evidence that his employer used a discipline "matrix" that considered his white race in setting his discipline. Id. at 1336, 1341. The employee also presented numerous other incidents where the discipline meted out to African-American employees was considerably less severe than that to white employees. Id. at 1338–41; see also Chapter 7, 683 F.3d at 1256 (holding the plaintiff had shown enough circumstantial evidence to survive summary judgment where the employer's human resources director testified the plaintiff's pregnancy was a "substantial or motivating factor" in her termination and her employer sent plaintiff's supervisor a letter stating that he had violated Title VII when he terminated her).

In contrast, in Connelly v. Metropolitan Atlanta Rapid Transit Authority, 764 F.3d 1358 (11th Cir. 2014), the plaintiff had not shown sufficient circumstantial evidence to create a reasonable inference of racial discrimination. Id. at 1364. The plaintiff—a white male—claimed he was fired because he was white. Id. at 1359. The only "even remotely race-related" evidence the plaintiff presented was that his supervisor, who was an African-American woman, referred to herself in a racist, derogatory manner and socialized with other African-American employees. Id. at 1364–65.

The question then is whether Dukes has presented sufficient evidence along the lines of Smith and Chapter 7 to survive summary judgment. Dukes claims the

following facts establish a reasonable inference of racial discrimination: (1) the specially called meeting where Copes was hired despite Aubrey Miller's absence and the meeting minutes incorrectly stated Dukes was there; (2) the Board's misstatement of Copes's qualifications in their position statement to the EEOC; (3) the fact that no African-American people are employed in the Transportation Department; (4) the removal of the second opening for a transportation route supervisor in 2012; (5) Bice's comment about receiving American-American resumes; and (6) Copes's hiring despite receiving a reprimand.

These facts are not sufficient to "present[] a convincing mosaic of circumstantial evidence that would allow a jury to infer" the defendants decided not to promote Dukes because of his race. Smith, 644 F.3d at 1328. Dukes presents no evidence that the Board's decision to call a special meeting was racially discriminatory. While the reasons for the special meeting are unknown, Dukes fails to point to any evidence that the Board intentionally excluded Aubrey Miller. The record does not reveal why Aubrey Miller was not in attendance. Neither does Dukes present any evidence that the Board lied about his attendance to conceal their discriminatory hiring. Similarly, Dukes points to no evidence that Copes's reprimand was disregarded so that a white employee could take his spot or that the 2012 position was removed to avoid hiring him. To the contrary, in both Smith and Chapter 7, it was clear that the person's race or protected status was

12

considered when making employment determinations.  See Smith, 644 F.3d at 1328–40; Chapter 7, 683 F.3d at 1256.

Neither are we persuaded by Dukes's statement that the Transportation Department employs no African-American people.  He has not offered any comparative information that makes this "otherwise anecdotal information significant" or shows this is a product of race discrimination.  Evans v. McClain of Ga., Inc., 131 F.3d 957, 963 (11th Cir.1997) ("Statistics without any analytical foundation are virtually meaningless." (quotation marks omitted)); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) (deeming the plaintiff's statistical evidence not probative because the plaintiff did not provide any other relevant information, including the number of people in the plaintiff's protected class that expressed interest in the position the plaintiff wanted).

Dukes also argues that Bice's comment as a Board Member about African-American resumes would allow us to infer intentional discrimination.  But the record shows the Board does not receive information about unsuccessful applicants.  The Board receives only information about the Superintendent's recommended candidate.  And this information is limited to only the job title, location of the position, and the recommended candidate's name.  Given these undisputed facts, Bice's comment does not allow us to infer intentional discrimination by the Board, the Board Members, or Fuller.

13

The most compelling piece of circumstantial evidence is the erroneous statements made in the Board's EEOC position statement.  While we have yet to address the issue directly, the Fifth Circuit, in a case upon which Dukes relies, has held that erroneous statements made in an EEOC position statement can be circumstantial evidence of discrimination.  Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 237 (5th Cir. 2015); see also Miller v. Raytheon Co., 716 F.3d 138, 144 (5th Cir. 2013).  But even considering the erroneous EEOC statement, it alone cannot create a convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer intentional discrimination.  As our precedent in Smith and Chapter 7 show, considerably more evidence demonstrating that an employer considered race is required than what Dukes has presented here.[4]  See Smith, 644 F.3d at 1328–1340; Chapter 7, 683 F.3d at 1256.

**AFFIRMED.**

---

[4] Because we can affirm the district court's grant of summary judgment on any basis supported by the record, we need not decide whether the Board Members or Fuller are entitled to qualified immunity.  See McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1141 (11th Cir. 2014).

14