[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14190
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00227-TFM

KENNETH REESE,

Plaintiff-Appellant,

versus

ARMY FLEET SUPPORT, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(September 5, 2019)

Before WILLIAM PRYOR, NEWSOM and GRANT, Circuit Judges.

PER CURIAM:

Kenneth Reese, a Sergeant Major in the United States Army, appeals the

denial of his motion for new trial and renewed motion for judgment as a matter of

law after a jury trial on his claim against Army Fleet Support, LLC (AFS) under

the Uniformed Services Employment and Reemployment Rights Act (USERRA),

38 U.S.C. § 4312 (2012), for failure to reemploy.  He argues that the district court erred in denying his renewed motion for judgment as a matter of law because—given his allegedly uncontested evidence at trial—no reasonable juror could have found against him.  He also argues that the court abused its discretion in denying his motion for new trial because it did not give the jury two critical instructions and admitted into evidence two allegedly irrelevant USERRA-related policies from his employer.  Finding no error or abuse of discretion, we affirm.

## I

### A

AFS is one of a series of military maintenance contractors hired by the federal government to conduct aircraft maintenance and repair at Fort Rucker, a military base in Alabama.  AFS had a contract to service Fort Rucker from 2003 to 2018—its contractual predecessors included Dyncorp, Northrup, and Sikorsky.  Reese has been a member of the United States Army Reserve since 1980, and he began working at Fort Rucker as an avionics technician for Northrup in 1983.  In 2003, Reese was deployed for Operations Enduring Freedom and Iraqi Freedom.  He notified his employer, Dyncorp—the Fort Rucker contract holder at the time—of his deployment.  Reese was honorably discharged from active duty in June 2009.

2

USERRA prohibits employers from discriminating against employees on the basis of their military service. *See* 38 U.S.C. § 4311. It also provides service members a right of reemployment in their previous civilian positions at the conclusion of their military service. *See id.* § 4312. Under § 4312, an employee must timely notify his employer of his intent to return and submit a written application for reemployment. *Id.* § 4312(a)(1), (3). Pertinent to this case, an employee whose active military duty lasted more than 180 days must submit an application for reemployment to his employer no later than 90 days after the completion of his service. *Id.* § 4312(e)(1)(D). Section 4312(e)(3) provides that an employee's failure to timely report to work or apply for reemployment does not result in an automatic waiver of his right to reemployment. Instead, the employee "shall be subject to the conduct rules, established policy, and general practices of the employer pertaining to explanations and discipline with respect to absence from scheduled work." *Id.* USERRA's benefits generally do not apply to service members who were deployed for over five years. *Id.* § 4312(a)(2). Reese, however, fell under an exception to this rule because he was "ordered to or retained on active duty . . . under [a] provision of law because of a war or national emergency declared by the President." *Id.* § 4312(c)(4)(B).

Reese alleges that he informed AFS of his intent to return under USERRA within the appropriate 90-day window. Sometime after July 25, 2009, Reese says

3

he visited AFS's human resources department, met with AFS recruiter Lesa Hatfield, and asked to be reinstated in his former job. Reese claims that Hatfield said he was ineligible for USERRA benefits because he had been gone for over five years. After explaining USERRA's war/national-emergency exception, Hatfield allegedly replied, "I'm not aware of that, but let me talk to my manager, Tom Anderson, and I'll let you know."

Reese claims that Hatfield gave him an application to fill out and return to her—and that he completed it and came back that same afternoon to submit it. Hatfield allegedly told him that she confirmed with Anderson that Reese could not be reinstated with seniority—instead, he would have to complete an online application and wait to be contacted about job openings in avionics. Reese said that Hatfield gave him Anderson's number to call, and that he left a voicemail but never heard back. At trial, Reese's friend and AFS coworker Mary Ann Byrd, his ex-girlfriend Joyce Bass, and his pastor, Reverend Robert Jones, testified that Reese had attempted to get his job back in the summer of 2009. Reese also submitted records of his application for unemployment benefits and registration with Alabama Joblink—a job search database—within the 90-day USERRA window, which he alleges support his claim that he tried and failed to be reinstated at AFS during that time.

4

AFS contests the entirety of Reese's account.  Hatfield does not recall any conversation with Reese, and she testified that she would not and could not have met with Reese, as he was an hourly, bargaining unit employee—she was not authorized to handle hourly employees' USERRA applications due to their collective bargaining agreement.  In fact, Hatfield could have been disciplined for handling Reese's application.  Reese would instead have been directed to Jo Ann Camarata had he shown up asking to be reinstated—her desk was in an open area right next to Hatfield's, and she was solely responsible for hourly employees' USERRA benefits.

Notably, Anderson—who allegedly confirmed that Reese was not eligible for reinstatement under USERRA—was not hired by AFS until August 2010, over one year after these alleged conversations.  In addition, there is no record of Reese entering the human-resources building—he would have been required to sign in when entering through the front door—nor are there any records of any of Reese's AFS job applications or calls to Anderson's purported phone number during that time.

The 90-day USERRA window closed on August 31, 2009.  Approximately three months later in November 2009, Reese's friend David Carpenter—an AFS employee—sent Reese an email that AFS had an opening in its avionics department.  Reese went to AFS's human resources department and met with

5

recruiter Fred Duff to learn more about the job opportunity.  Reese claims that they discussed his interactions with AFS that summer, but Duff denies that they discussed any prior job applications or USERRA reinstatement.  In December 2009, AFS hired Reese as an avionics technician, without seniority.  He began work on January 10, 2010.

## B

After beginning his new tenure at AFS, Reese contacted his union, and later both Employer Support of the Guard and Reserve and the Department of Labor, to try to get his seniority restored.  None of these efforts proved successful—Reese then filed the lawsuit at issue here in April 2016, nearly seven years after he claims his USERRA benefits were denied.  Reese consistently stated that the *only* issue at play in this case was whether he applied for reemployment within USERRA's 90-day window.  Essentially, the case boiled down to a he-said/they-said situation as to whether Reese applied for reinstatement on time.

As relevant to this appeal, the district court declined to give two of Reese's requested jury instructions at trial.  The first, Jury Instruction No. 14, stated:

> A person who fails to report or apply for employment or reemployment within the appropriate period specified in this subsection shall not automatically forfeit such person's entitlement to the rights and benefits referred to in [38 U.S.C. § 4312(a)] but shall be subject to the conduct rules, established policy, and general practices of the employer pertaining to explanations and discipline with respect to absence from scheduled work.

6

The second, Jury Instruction No. 17, stated:

> USERRA establishes a floor, not a ceiling, for the employment and reemployment rights and benefits of those it protects. In other words, an employer may provide greater rights and benefits than USERRA requires, but no employer can refuse to provide any right or benefit guaranteed by USERRA.

Additionally, the district court admitted evidence of AFS's USERRA policies from 2012 and 2015, over Reese's objection. AFS could not locate its 2009 policy, so the 2012 and 2015 policies were used as exemplars at trial— personnel specialist Jo Ann Camarata testified that these policies were similar to the missing 2009 policy. Camarata testified that the 2012 policy stated that "[e]mployees who volunteer, enlist, or are inducted for military service are granted a leave of absence in accordance with USERRA. Employees must provide a copy of their military orders to the human resource office." The jury ultimately ruled in favor of AFS, finding that Reese did not apply for reinstatement within USERRA's 90-day window.

Reese filed a renewed motion for judgment as a matter of law, and, alternatively, a motion for new trial. He contended that the uncontested evidence he presented at trial left the jury's verdict unsupported. He also argued that he was entitled to a new trial because of the court's failure to give the jurors the two aforementioned jury instructions, which prevented the jury from determining whether AFS had policies that could have expanded his rights under USERRA and

7

preserved his seniority regardless of any noncompliance with the 90-day rule.  He also maintained that the introduction of AFS's USERRA policies from 2012 and 2015 was irrelevant and confusing.

The district court held that the evidence at issue was properly sent to the jury and that the verdict was supported by the evidence.  It also held that although Reese's proposed jury instructions accurately stated the law, there was no evidence introduced at trial relating to any AFS policies that could have expanded Reese's rights under USERRA, as well as that the evidence of post-2009 USERRA policies was properly admitted.  Reese appealed the denial of these motions.

## II

We review a ruling on a party's motion for judgment as a matter of law *de novo*.  *Connelly v. Metro. Atlanta Rapid Transit Auth.*, 764 F.3d 1358, 1363 (11th Cir. 2014).  In doing so, "[w]e review all of the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the non-moving party."  *Id.* (quoting *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995)).  The question before us is "whether such sufficient conflicts exist in the evidence to necessitate submitting the matter to the jury or whether the evidence was so weighted in favor of one side that one party must prevail as a matter of law."  *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1268 (11th Cir. 2003) (quoting *Thosteson v. United States*, 304 F.3d 1312,

8

1316 (11th Cir. 2002)).  This Court "will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence." *Skye v. Maersk Line, Ltd.*, 751 F.3d 1262, 1265 (11th Cir. 2014) (quoting *Lambert v. Fulton Cty.*, 253 F.3d 588, 594 (11th Cir. 2001)).

Here, the district court did not err in denying Reese's renewed motion for judgment as a matter of law.  Although the evidence could have allowed the jury to reach a contrary conclusion, the case merited submission to a jury.  Reese alleges that his testimony and the testimonies of his witness-friends are undisputed.  He contends that his version of the alleged conversation with Hatfield is also undisputed, since she testified that she did not *recall* a meeting with Reese, not that it definitely did not happen.  That is incorrect; Reese's evidence was clearly contested.  As discussed above, AFS presented a great deal of evidence indicating that Reese's version of events could not and did not happen.  The jurors were free to decide for themselves whether to believe the "uncontested" testimony of Reese's friends or the contradictory testimony of AFS's employees.  Accordingly, we affirm the district court's denial of Reese's renewed motion for judgment as a matter of law.

## III

We review a district court's denial of a motion for new trial for an abuse of discretion.  *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013).  We

9

likewise "review . . . ruling[s] on the admissibility of evidence for an abuse of discretion." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1276 (11th Cir. 2008). This Court may order a new trial if a litigant's "substantial rights" are adversely impacted by defects in the trial—including presentation of prejudicial information, misconduct or pernicious behavior, and erroneous jury instructions. *See Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1465 (11th Cir. 1994); *see also* Fed. R. Civ. P. 61 (requiring courts to "disregard all errors and defects that do not affect any party's substantial rights").

## A

A district court's failure to give a requested jury instruction constitutes reversible error when: "(1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *Watkins v. City of Montgomery*, 775 F.3d 1280, 1291 (11th Cir. 2014) (quoting *Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1224 (11th Cir. 2012)). We will not disturb the trial judge's discretion unless left with a "substantial and uneradicable doubt as to whether the jury was properly guided during its deliberations." *Id.* (quoting *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1288 (11th Cir. 1998)).

Here, the district court did not abuse its discretion in failing to give Reese's

10

requested jury instructions.  Although it is true that these instructions correctly stated the law under USERRA, they did not pertain to an issue before the jury.  As Reese himself stipulated, the only issue was whether he timely filed for reinstatement under USERRA—Reese never suggested that AFS had policies expanding his rights under USERRA at trial.  As the district court stated, Reese's "problem is that he submitted no evidence that AFS gave more benefits to employees on military leave than what USERRA statutorily requires"—instead, he "testified explicitly and repeatedly that he returned within the ninety-day requirement and AFS turned him away.  The jury chose to disbelieve him."

Reese argues that these instructions were proper because AFS's unlocated and unintroduced 2009 USERRA policy "could have" expanded his rights, as could the substance of the hourly employees' collective bargaining agreement, which likewise was not introduced at trial.[1]  But—as the district court correctly stated—Reese "solely asserted that because AFS could not provide the 2009 policy . . . there *could have been* greater rights.  This supposition is insufficient to present such a legal theory to the jury."  Similarly, since the collective bargaining agreement was not introduced at trial, the mere fact of its existence cannot support

---

[1] Reese also argues that allegedly "late-produced" charts documenting the exit and return dates of AFS employees who took a leave of absence could support a finding that AFS had additional policies expanding USERRA.  It, too, is insufficient to support giving the requested instructions to the jury, as the documents "are vague and their import unclear," and no argument was made at trial that they demonstrated that AFS had USERRA-expanding policies in place in 2009.

11

giving the instructions at issue.  The district court, therefore, did not abuse its discretion in refusing to give these instructions.

## B

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "We will not overturn an evidentiary ruling unless the moving party establishes a substantial prejudicial effect."  *Goldsmith*, 513 F.3d at 1276.

Here, the district court did not err in introducing AFS's 2012 and 2015 USERRA policies.  Reese sued AFS years after the critical events in question— deterioration of evidence over such a lengthy time span is inevitable.  These two policies were not irrelevant or confusing—as the district court correctly asserted, it only "allowed the admission of the policies to the extent they were brought in through witness testimony relating the documents to the 2009 period at issue." Indeed, "Camarata testified that the 2009 policy could not be found," but "that other policies similar to the 2012 and 2015 [policies] had been in place both before and after 2009."  Thus, it was clear to the jury that these policies were not *identical* to, but rather *similar* to, the 2009 policy—their introduction had no substantial prejudicial effect and was not an abuse of the district court's discretion. Accordingly, we affirm the district court's denial of Reese's motion for new trial.

12

**AFFIRMED.**